George Resnik, Plaintiff-Appellant, v. Donald Michaels, et al., and the Village of Park Forest, a Municipal Corporation, Defendants-Appellees.

Gen. No. 49,442.

First District, Third Division.

September 17, 1964.

Jules S. Gershon, of Chicago (Philip Z. Levinson, of counsel), for appellant.

Davis, Dietch & Ryan, of Chicago (Martin O. Mc-Kevitt, Jr., of counsel), Henry X. Dietch, Village Attorney, of Park Forest, for appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiff was injured in an automobile collision which occurred on October 24, 1958, at the intersection of Tampa and Talala Streets in the Village of Park Forest, Illinois. He was a passenger in an automobile driven by the defendant, Donald Michaels, eastbound on Tampa. The other automobile was being driven by the defendant, Robert Parker, southbound on Talala. The plaintiff's complaint charged Michaels with willful and wanton misconduct and charged Parker and the Village of Park Forest with negligence. The court granted the Village's motion

for summary judgment, from which judgment the plaintiff prosecutes the present appeal, the court having found that there was no just reason for delaying the appeal.

The gist of the complaint against the Village is its failure to provide two-way stop signs on Tampa Street at the intersection with Talala. The Village trustees had approved the installation of the signs in a resolution passed at their meeting on August 26, 1958, because "there is heavy traffic at this corner," and had instructed the Village Manager to proceed with the installation, but at the time of the accident the stop signs had not yet been put up. The plaintiff contends that once the municipality passed the resolution or ordinance directing the installation of stop signs, it then assumed an obligation to act with reasonable diligence to complete its undertaking, and that the failure to do so constituted negligence in the performance of a ministerial duty. The position of the Village is that it was exercising a governmental function when it authorized the erection of the stop signs and that it was not subject to liability until it began to carry out the ministerial function of putting up the signs and maintaining them.

 It has been uniformly held that municipal corporations are not subject to liability for governmental functions but are liable for torts arising from ministerial or proprietary functions. Ludwig v. Board of Education, 35 Ill App2d 401, 183 NE2d 32. The classification of the activities of municipal corporations into governmental and ministerial or proprietary functions has been criticized as arbitrary, incapable of uniform application and productive of incongruities. (See Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill2d 11, 163 NE2d 89, and the legal articles cited therein at page 17.) The criticism is well taken; the distinctions made between these

109

functions are not always clear and the attempt to categorize them has resulted in incongruities. However, the fact remains that, "The difference between proprietary and governmental functions is of importance in determining the liability of municipal corporations for the tortious conduct of their officers, agents and employees." Ludwig v. Board of Education, supra. The importance is illustrated in the present case where, "The Plaintiff's claim against the Village is that it negligently failed to perform a ministerial act and that this negligence was a proximate cause of the injury to the plaintiff."

■ There have been numerous cases in Illinois involving the liability of municipal corporations for injuries resulting from the development, maintenance and improvement of streets, sidewalks, bridges and sewers. A municipality is responsible for the negligent construction of public works and for its failure to maintain them, but it is not obligated, and is not liable for its neglect or refusal, to undertake such projects. The difficulty involved in subjecting a city, town or village to such an obligation, for example keeping sidewalks well lighted, was pointed out in City of Freeport v. Isbell, 83 Ill 440 (1876):

> "It might be a matter of great convenience to have all our cities or incorporated towns well lighted, in the nighttime, with gas, and it might add to the security of pedestrians whose business or tastes might require them to travel at late hours of the night; but to hold that a city or incorporated town was under a legal obligation to thus provide the streets with light, might well be regarded as an act of usurpation, on the part of the courts, of the legislative power, which has been exclusively delegated to the legislative department of the municipality."

110

There are several decisions which delineate the extent of a city's liability. In Buckley v. City of Chicago, 3 Ill App2d 39, 120 NE2d 375, the City was held liable for an accident caused by its failure to maintain stop signs at an intersection. One of the streets had been designated a through street by the City Council over thirteen years prior to the accident. Stop signs had been installed, but for some reason there was no sign there at the time of the accident, nor had there been any for many months before. The court stated:

> "In the present case the ordinance creating a through street and providing for stop signs at each intersection was designed to protect travelers on intersecting and through streets from the danger of collision. In our view it was readily foreseeable that such a collision might happen because of the City's failure to maintain these stop signs on Throop Street."

The City of East Moline was held liable for the negligent maintenance of a stop light, which became defective and caused a collision between two automobiles traveling through the intersection. Johnston v. City of East Moline, 405 Ill 460, 91 NE2d 401. The court discussed the City's liability in terms of the distinction between governmental and ministerial functions and concluded that after the City had constructed the signal system and put it into operation it was imposed with the duty of keeping it in such condition that it would not create a hazard for the citizens. The court stated:

> "A municipal corporation acts judicially or exercises discretion when it selects and adopts a plan in the making of public improvements, but as soon as it begins to carry out that plan it

111

acts ministerially and is bound to see that the work is done in a reasonably safe and skillful manner."

In the Buckley and Johnston cases, the municipalities were found liable for negligently maintaining traffic regulators; in the present case the Village of Park Forest had done nothing except authorize the placement of stop signs. As far as the plaintiff and all other motorists using the streets in the Village of Park Forest were concerned, there had been no change in the regulation of traffic at the corner of Tampa and Talala; no motorist could have relied upon the protection that would have been afforded by the signs.

In Locigno v. City of Chicago, 32 Ill App2d 412, 178 NE2d 124, an automobile accident occurred at an intersection containing no stop signs; as in the present case, none had been put up. The street on which the plaintiff was traveling was a detour from¹ a main street that was being repaved. The plaintiff contended that the detour was being used as a through street and that the failure of the City to install stop signs at the intersection where the injury occurred established the City's liability. (Ch 27–52 of the Municipal Code of Chicago provided that it was the duty of the commissioner of streets and electricity to erect stop signs on all streets intersecting through streets, unless the traffic is controlled by traffic signals.) Although the traffic engineer for the City testified that he had ordered stop signs to be placed at the intersection, the court held that a through street could only be established by the City Council, which it did not do, and even if it had it would not have become one until the proper signs were posted. In reversing the judgment against the City, the court stated:

"Should the case be considered from the standpoint of regulation of traffic, the City would not

be liable. As a general rule, public liability for an injury resulting from the use of a street or other public way in such mode or manner as to endanger the safety of travelers, but which does not render the way physically defective, cannot be predicated upon the failure of the public authorities, by the enactment of ordinances or otherwise, to prevent such use . . . Johnston v. City of East Moline, 405 Ill 460, 91 NE2d 401, and City of Chicago v. Seben, 165 Ill 371, 46 NE 244, indicate that until the City acts it cannot be held liable. In the case at bar the City was under no obligation to post signs at the intersection. The Johnston case involved traffic-control lights that were in operation at the time of the accident."

■■ Liability follows negligence. The Village of Park Forest certainly would not be liable for not passing an ordinance providing for traffic signs on Tampa Street at the intersection with Talala, on the ground that it thereby failed to regulate the flow of traffic and failed to protect motorists from the dangers inherent in driving an automobile at that corner. It follows that the Village was not negligent and could not be liable for not installing the signs after the ordinance was passed. The legal obligation and the ministerial function of the Village did not commence until the signs were erected. From that time on it had a duty to properly maintain the signs so that those motorists or pedestrians who would come to depend upon them for protection would not be endangered either by their absence or their nonoperation.

The summary judgment granted by the trial court is affirmed.

Affirmed.

SCHWARTZ, P. J. and SULLIVAN, J., concur.