461 So.2d 63 (1984)
James H. PAYNE, Etc., et al., Petitioners,
v.
BROWARD COUNTY, et al., Respondents.
No. 64419.
Supreme Court of Florida.
September 13, 1984.
Rehearing Denied January 7, 1985.
*64 Krathen & Sperry, P.A., Fort Lauderdale, and Nancy Little Hoffmann of Hoffmann & Burris, Fort Lauderdale, for petitioners.
Susan F. Delegal, Gen. Counsel and John Franklin Wade, Asst. Gen. Counsel for Broward County, Fort Lauderdale, for respondents.
Edna L. Caruso, West Palm Beach, Florida, amicus curiae for The Academy of Florida Trial Lawyers.
EHRLICH, Justice.
This case is before us for review of three questions certified to be of great public importance. Broward County v. Payne, 437 So.2d 719 (Fla. 4th DCA 1983). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Seventeen-year-old Allison Payne was fatally injured October 24, 1978, as she tried to cross Rock Island Road walking home from school. Rock Island Road was a twolane road extending north from Sample Road. Coral Springs High School was located on the northeast corner of the intersection. Two sidewalks paralleled Sample Road, one running along the road, the other about 125 feet to the north, on the north edge of a faculty parking lot. Allison had walked along the north sidewalk, which ended at Rock Island Road, and it was at the end of this walk where she was killed. The evidence was inconclusive as to whether Allison had looked toward the intersection, where the truck came from, before she stepped into the road.
Rock Island Road was planned as a fourlane thoroughfare, but was opened after the first two lanes were completed. Broward County, which was building Rock Island Road, planned various pedestrian control measures for the completed project, such as crosswalk markings, rerouted sidewalks, and traffic signals, but none of these measures had been implemented at the time of the accident. Coral Springs city officials had been asking the county since 1976 to install traffic signals, but, when signals were still not installed at the beginning of the 1978 school year, Coral Springs police began to provide traffic control during school hours. At the time of the accident, one officer was directing traffic, another was monitoring the intersection for traffic violators, and a "community service aide" was at the intersection to help students cross the street. The pick-up truck which struck Allison had turned left off Sample Road, north onto Rock Island Road.
Allison's parents sued Broward County, the county school board, the city, the driver and the owner of the truck, and the contractor that built Rock Island Road. The latter three parties were dismissed during trial, and a directed verdict was entered in favor of the school board. The jury returned a verdict finding the city fifty percent negligent, the county forty percent negligent, and Allison ten percent negligent. The county appealed to the Fourth District, which consolidated the case with an appeal by the Paynes on the directed verdict for the school board.
The district court opinion addressed the question of whether the county's sovereign immunity from liability for failure to install the traffic light extended from the time the decision was made to install the light to the time of the accident. The court held that sovereign immunity did apply, under this Court's decision in Department of Transportation *65 v. Neilson, 419 So.2d 1071 (Fla. 1982). However, based on this Court's continued adherence to the principle that a governmental entity has a duty to warn of a known trap in Harrison v. Escambia County School Board, 434 So.2d 316 (Fla. 1983), the district court certified three questions. The district court opinion did not address the appeal on the directed verdict for the school board, and this Court granted the board's motion to dismiss it as a party to the proceedings in this Court.
The certified questions are:
I. Was this [the opening of the Rock Island Road intersection] the creation of the kind of known danger which requires a warning or an aversion of the danger?
II. Did the decision once made of the need to install the traffic light carry with it the concomitant duty to warn until such time as the light was operational?
III. Finally, as the Supreme Court required in Harrison, did the instant complaint adequately allege the dangerous condition requiring warning of the danger?
437 So.2d at 720.
We answer the first two questions in the negative, and decline to answer the third as moot.
Initially, we note that a governmental entity is always protected by sovereign immunity from liability for the decision to create or open a road. Petitioner argues that the county negligently opened Rock Island Road before center lines or other safety devices were in place. The record shows that there may have been some confusion between county departments, resulting in opening of the road before the center lines had been painted, but the record also clearly shows that the decision to open the road was made by those with authority to make such a decision. Regardless of whether the decision to open the road was unwise, the purpose of this Court's distinction between planning-level and operational-level functions is to prevent judicial intrusion into planning-level decisions. Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). We have previously held that "the decision to build or change a road, and all the determinations inherent in such a decision, are of the judgmental, planning-level type." Neilson, 419 So.2d at 1077. However, even when a governmental act is subject to sovereign immunity, liability may arise from a planning-level decision when that decision creates a hidden trap. "[W]hen a governmental entity creates a known dangerous condition, which is not readily apparent to persons who could be injured by the condition, a duty at the operational-level arises to warn the public of, or protect the public from, the known danger." City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982). There is no question that the county created and was on notice of the conditions at the intersection and the surrounding area. The only question, then, is whether the conditions created a known danger not readily apparent to potential victims or constituted a hidden trap for pedestrians. We conclude that they did not.
Although the parties and the district court focus on the lack of a stoplight at the intersection, this fact is not dispositive. Even though a stoplight was not installed, police officers were controlling traffic at the intersection, and such control is the functional and legal equivalent of a stoplight. Avey v. City of West Palm Beach, 152 Fla. 717, 718, 12 So.2d 881, 881 (1943) (traffic light "is in effect the substitution of a signal for a policeman in the regulation of traffic on the streets"), overruled on other grounds, Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957); Weissberg v. City of Miami Beach, 383 So.2d 1158 (Fla. 3d DCA 1980) (police officer and traffic signal equated in the sense that there is an operational duty to ensure that either the officer or the light is properly controlling traffic).
As a matter of law, neither the pleadings nor the evidence establish that the danger Allison faced was any greater than that facing any pedestrian seeking to cross any street at midblock. The pleadings *66 and evidence show that the county had not installed a traffic light, that Rock Island Road had been opened without a center line (although the line had been painted at the time of the accident), and that plans had been made to upgrade pedestrian and vehicular control, but they had not been implemented. However, regardless of the circumstances which resulted in the intersection being in the state it was the day of the accident, no liability may be imposed if those circumstances failed to create a known danger not readily apparent to potential victims, or a trap, and there was no such hidden danger or trap.
We base our conclusion that the intersection and the point where the accident occurred were not a trap, and that whatever danger there was in crossing the street midblock was open and obvious, on the following facts apparent from the record:
1. A city police officer provided traffic control.
2. The accident occurred 125 feet north of the intersection, where the north sidewalk on which Allison walked ended at Rock Island Road.
3. There was no crosswalk at the point where the north sidewalk terminated.
4. There was no sign instructing pedestrians at the end of the north sidewalk to cross at the intersection, nor was there any other impediment to crossing the road at that point.
5. Although there was no sidewalk leading south from the north sidewalk to the corner of the intersection, where a police "community service aide" was available to assist in crossing, there was no impediment to walking south to reach the intersection. The entrance to the faculty parking lot was between the north sidewalk and the intersection, so the way was paved, although normal care would have to be exercised in crossing the vehicular way.
Even if the county deliberately designed the intersection to permanently remain in the state it was the day of the accident, the danger created was no greater than that existing anywhere it is possible to cross a road in midblock. A governmental entity has no duty to warn pedestrians of the routine danger of crossing the street in midblock.
This brings us to the second certified question, which focuses on the lack of a traffic light at the intersection, which we also answer in the negative.
The decision whether to install a traffic control light at an intersection is a planning decision clothed with immunity, but that decision carries with it the concomitant duty to warn until such time as the light is operational if the absence of such traffic light creates a trap or creates a known danger not readily apparent to persons in or about the intersection. For the reasons expressed earlier there was no duty to warn Allison under the factual circumstances in this case. The time delay between the decision to install the traffic light and the actual installation does not remove the cloak of immunity.
It is unarguable that the plans envisioned by the county would improve safety. Planning to improve safety can neither create a danger nor transform a patent danger into a latent hazard.[*]
*67 Accordingly, we approve the district court decision.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD and SHAW, JJ., concur.
NOTES
[*] We find instructive two cases from intermediate courts in Illinois. In Resnik v. Michaels, 52 Ill. App.2d 107, 201 N.E.2d 769 (1964), a municipality had passed an ordinance to install stop signs at a certain intersection, but the signs had not been installed two months later when the plaintiff was injured. The court reasoned that the village would not have been liable had it never passed the ordinance, and that it therefore could not be liable until after the signs were installed. The legal obligation did not arise until the signs were installed, and then the obligation was to maintain the signs so that those who would come to depend on the signs would not be injured by their absence or nonoperation.

In Best v. Richert, 72 Ill. App.3d 371, 27 Ill.Dec. 663, 389 N.E.2d 894 (1979), the plaintiff's children were killed when they were forced to walk in the street after a city sidewalk ended abruptly in mid-block. The court rejected the assertion that the city was liable because it had undertaken a plan to construct a sidewalk along the remainder of the block when it passed an ordinance requiring property owners to construct sidewalks. Relying on Resnik, the court found that even if the ordinance constituted a plan, the plan had to be completed before liability attached.
We find especially convincing the Resnik rationale that the duty to maintain arises because the citizenry depends on those things a government has undertaken to provide. Applying this to the operational-planning dichotomy of Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), citizens have a reasonable expectation that those things provided by the government as a result of its planning function may be relied upon to continue to operate because of operational-level maintenance.