499 So.2d 920 (1986)
Michael Joseph McFADDEN, Sr., Etc., et al., Appellants,
v.
COUNTY OF ORANGE, Etc., Appellee.
No. 85-1451.
District Court of Appeal of Florida, Fifth District.
December 24, 1986.
*921 Deborah C. Edens and John R. Overchuck, of Maher, Overchuck, Langa and Lobb, Orlando, for appellants.
Ernest H. Eubanks, of Pitts, Eubanks, Hannah, Hilyard & Marsee, P.A., Orlando, for appellee.
ORFINGER, Judge.
Michael J. McFadden, as personal representative of the estate of Brendan McFadden, appeals from the final summary judgment entered in favor of appellee Orange County.[1] Appellant contends that the final summary judgment based upon the doctrine of sovereign immunity was erroneously entered. We affirm.
About 8:45 P.M. on April 11, 1980, twelve-year-old Brendan McFadden, decedent, and his thirteen-year-old brother, Dennis, were attempting to cross Fairbanks Avenue (State Rd. 424A) from the northwest quadrant of the intersection to the southwest quadrant of the intersection on their way to the Majik Market, when Brendan was struck and killed by an automobile westbound on Fairbanks. Brendan had pushed a pedestrian cross button and when the traffic lights for eastbound traffic on Fairbanks showed red, the boys started to cross the street. The traffic lights are phased so that westbound through and left-turning vehicles on Fairbanks have the green light while eastbound vehicles on Fairbanks have red. The vehicle which struck the decedent came through on a green light.
*922 
The pedestrian cross button on the northwest corner activated by Brendan only provides protection for a pedestrian crossing from the northwest to the northeast quadrant. The pedestrian button for crossing Fairbanks from north to south is on the northeast corner. As indicated on the diagram, the intersection had crosswalks painted on the street on the north, east and south only. There was no crosswalk between the northwest and southwest quadrants of the intersection. Dennis testified in his deposition that he and his brother were quite familiar with the intersection and had crossed there many times before, and they did not follow the pedestrian crosswalks because it was "harder" and would involve backtracking. There was no "walk/don't walk" device facing the boys as they crossed where they did.
The evidence shows that Orange County had responsibility for the maintenance of the signals pursuant to a maintenance agreement between Orange County and Florida Department of Transportation (D.O.T.). Orange County could make minor modifications in the timing, that is, Orange County could add a few seconds to a movement or reduce by a few seconds the time allotted, but it could make no changes in the phasing, indications, or deflections of the signals. Orange County had no authority to change the timing of the lights at the intersection to alter the red/green phasing on Fairbanks. Only D.O.T. could do this.
Appellant argues that Orange County knew that a dangerous condition existed at the intersection and that its failure to warn of the known dangerous condition was not a planning level protected action. Decisions relating to the installation of appropriate traffic control methods and devices are discretionary decisions which implement police power and are judgmental, planning level functions to which absolute immunity attaches. Department of Transportation v. Neilson, 419 So.2d 1071, 1077 (Fla. 1982). Appellant recognizes this principle but relies on the exception announced in City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982), that
a governmental entity may not create a known hazard or trap and then claim immunity from suit for injuries resulting from that hazard on the grounds that it arose from a judgmental, planning-level decision. When such a condition is knowingly created by a governmental entity, then it reasonably follows that the governmental entity has the responsibility to protect the public from that condition, and the failure to so protect cannot logically be labelled a judgmental, planning-level decision.
Id. at 1086. Therefore, argues the appellant, Orange County had a duty to warn of this known dangerous condition.
The argument is not persuasive here. First, even assuming that the condition was a hazard or trap, a matter which we do not decide, there is no evidence whatsoever *923 that Orange County created that condition. On the contrary, the evidence shows without dispute that it did not. It is undisputed that Orange County neither designed nor installed the traffic signals or pedestrian control devices at the intersection nor did it have any authority to modify the timing or phasing of the traffic lights of which the appellant complains. Second, notwithstanding the statement to the contrary in the dissenting opinion, there is no evidence that Orange County was aware of the existence of any hazard at this intersection. There was no evidence of any prior accidents or complaints or any other indication that would have placed Orange County on notice that a hazard existed. Certainly, Orange County's traffic engineers knew of the sequencing of the lights.[2] But that in itself is not notice that a hazard exists. There is no evidence of any malfunction of the traffic lights at the time of the accident, and even appellant's traffic expert conceded that none existed.
Reliance by the dissent on Ralph v. City of Daytona Beach, 471 So.2d 1 (Fla. 1983) is misplaced. The allegations in Ralph were that the City maintained the beach as a public resort; that it invited the plaintiff and other bathers to use the beach; that it permitted motor vehicles to drive in an area where sunbathers were lying on the beach although it could have supervised the traffic and directed the vehicles to other areas; and that it breached its duty to the plaintiff by failing to warn sunbathers of the danger which existed because of inadequate supervision of the mixture of people and vehicles. Thus, in Ralph, it was alleged that the governmental agency did create the hazard on the beach and had the power to correct it. This power and authority, if not the creation, gave rise to the duty to warn. See also Harrison v. Escambia County School Board, 434 So.2d 316 (Fla. 1983) (the plaintiff must allege the existence of an operational level duty on the part of the governmental entity to warn the public of a known condition which, created by it and not readily apparent, constitutes a trap for the unwary). Because the undisputed evidence shows that Orange County neither created the condition complained of nor had any power or authority to alter the condition, no operational level duty to warn existed.
Contrary to the assertion in the dissent, there is no case in Florida imposing a duty upon a governmental entity to warn of a hazard or trap which it neither created nor could control. In Neilson, the plaintiff alleged that a hazard existed where certain streets merged, confusing travellers into believing that they could traverse the intersection without danger from crossing vehicles, and that the intersection was not properly controlled by traffic signals. The dictum in the case concerning the duty to warn relates to the creation of the hazard. The intersection had been designed and constructed by the defendant. In Collom, the hazard or dangerous condition had been created by the City of St. Petersburg. Thus, any reference to a duty to warn was in the context of the creation (or possibly the control) of a known hazard by the entity, not just an abstract duty. This is emphasized in Ralph, where the court, quoting from Collom says:

*924 We hold that when a governmental entity creates a known dangerous condition, which is not readily apparent to persons who could be injured by the condition, a duty at the operational-level arises to warn the public of, or protect the public from, the known danger. The failure to fulfill this operational-level duty is, therefore, a basis for an action against the governmental entity. [Emphasis in original].
471 So.2d at 2.
In suggesting that the governmental entity has a duty to warn of a known hazard or trap even where the entity has not created the danger, the dissent does not address the question of the power or legal authority of the entity to give such warning. Only D.O.T. has the authority to erect "signs, signals, markings and other traffic control devices" on a state highway. § 335.09, Fla. Stat. (1985). Any traffic sign erected on a state highway by someone other than D.O.T. is unauthorized, and thus prohibited by section 316.0765. We should not attach liability to a governmental agency for failure to do that which it is legally prohibited from doing. Thus we find no operational level duty to warn imposed on Orange County.
AFFIRMED.
UPCHURCH, C.J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
Final summary judgment in favor of Orange County was erroneously entered on the basis of sovereign immunity because the record raises material fact questions concerning appellee's duty to warn and to take other reasonable steps to prevent the kind of accident which occurred in this case. A child attempting to cross a busy intersection in Orange County was hit by a car and killed. Taking all inferences adversely to Orange County, as we must do in the context of reviewing a final summary judgment,[1] this intersection can be fairly characterized as a brilliant pedestrian trap.
The record establishes that the child and his brother were attempting to cross Fairbanks, a busy four-lane road, at its intersection with Formosa from the northwest corner to the southwest corner. It was dusk and the vehicles traveling on Fairbanks had turned on their headlights. The boys pressed a crosswalk button on the northwest corner and waited for the traffic light on Fairbanks to turn red. They were unaware that the pedestrian button only controlled the traffic on Formosa, not Fairbanks.
The boys were also unaware that at the intersection, when there was a car traveling west on Fairbanks in the left turn lane, the lights at the intersection for eastbound traffic would turn red, but the lights on the other side of the intersection visible to westbound traffic, would still be green.
Relying on the red light visible to them, the boys started across the westbound lanes of Fairbanks. The predictable happened. A car traveling west with the green light failed to see the child in time to stop. And the child, unable to judge the speed and distance of the oncoming car because of nighttime conditions, and not expecting a car to run what appeared to him to be a red light, proceeded into the path of the car.
The denial of liability in this case as to Orange County was based solely on sovereign immunity.[2] On the basis of this record, sovereign immunity does not apply as a matter of law. Appellee recognizes, but fails to distinguish, the rule in Florida which provides that sovereign immunity does not bar suit against a governmental entity if there is a trap or danger with regard to its public works or responsibilities, which is neither obvious nor apparent *925 to the general public, but about which it has or should have had notice. Carter v. City of Stuart, 468 So.2d 955 (Fla. 1985); DOT v. Neilson, 419 So.2d 1071 (Fla. 1982); City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982); compare Payne v. Broward County, 461 So.2d 63 (Fla. 1984) and Paneque v. Metropolitan Dade County, 478 So.2d 414 (Fla. 3rd DCA 1985) (where there was no hidden danger or trap).
Orange County relies heavily on the fact that the State Department of Transportation, and not Orange County, designed this intersection and the sequence of signals. However, documents in the record establish that Orange County had the right to review and make suggestions prior to the installation of the traffic control system, and it also had the right to make suggestions after construction should the intersection prove to be dangerous. Further, under a contract with the state, the county had the duty to supervise, maintain, and operate the intersection. Thus, there was a material question of fact as to whether or not Orange County participated sufficiently in the design and maintenance of this intersection so as to allow it to be held responsible to a degree for the creation of the hazard.[3]
Even if Orange County did not create the trap or hazard in this case, it had a duty to warn pedestrians at this intersection not to rely on red lights in crossing from the northwest to the southwest, or not to cross at all, because it knew of the hazard,[4] and the hazard was neither obvious nor apparent. In their depositions, the traffic engineers for Orange County admitted they knew about the sequencing of the traffic signal which resulted in the child's death. The County had supervised or maintained the intersection since its construction in 1973. They said they knew pedestrians normally can and do rely on red lights at intersections to cross streets,[5] and they agreed it was hazardous for pedestrians to do so at this intersection.
Although there was no painted crosswalk from the northwest to the southwest on Fairbanks, there was no other clue or sign at this intersection that pedestrians should not cross in that direction. Certainly there was no indication traffic would be directed against them. The subtle message stemming from the absence of a painted crosswalk was insufficient to remove the question of the adequacy of the warning from the jury.
Even though a governmental entity does not create a hazard or trap making normal passage or use of streets hazardous, liability may be imposed where the street is within the entity's sphere of responsibility, and the hazard or danger is known to the entity and not obvious to the traveler.[6] In Ralph v. Daytona Beach, 471 So.2d 1 (Fla. 1983), rehearing denied, (Fla. 1985), the governmental entity did not create the traffic *926 hazard on the beach, but it failed to warn or take any steps to correct it. The court cited Neilson,[7] that "if the complaint alleged a known trap or dangerous condition for which there was no proper warning, such allegation would have stated a cause of action." Ralph at 2. Nowhere in Ralph or any other case has the supreme court required that the governmental entity create the hazardous condition. The Ralph court, citing Neilson, said:
The failure to so warn of a known danger is, in our view, a negligent omission at the operational level of government and cannot reasonably be argued to be within the judgmental, planning-level sphere. Clearly, this type of failure may serve as the basis for an action against the governmental entity.
Ralph at 2.
In this case, the documents in the record established that Orange County has the responsibility for maintaining and supervising this intersection. The duty of a governmental entity to warn travelers of unexpected hazards in streets within its jurisdiction has long been held to be a non-planning level, operational duty, and it existed at common law, prior to the waiving of sovereign immunity. See Woods v. City of Palatka, 63 So.2d 636 (Fla. 1953); Panama City v. Eytchison, 134 Fla. 833, 184 So. 490 (Fla. 1938); 19 McQuillin, Municipal Corporations, § 54.03b (3d Ed. 1985); 45 A.L.R.3rd 875, 911 (1972). The waiver of sovereign immunity by section 768.28 should not affect that duty.[8] That statute merely provides that a governmental entity has potential liability where a private party would have a duty under similar circumstances. A private party would have potential liability under similar circumstances for failure to warn:
2. A invites his friend B to dinner. A knows that his private road has been dangerously undermined at a point where it runs along an embankment and that this is not observable to a person driving along the road. A, when giving the invitation, forgets to warn B of this. While B is driving along the road it collapses, causing serious harm to B. A is subject to liability to B.
Restatement (Second) of Torts § 342 (1965).
To excuse liability merely because the governmental entity did not create the hazard, given the entity's common law duty to make its streets safe for ordinary use and passage, results in absurdities. What if the hazard were the reopening of the Winter Park sinkhole into Fairbanks? Would the City have no duty to put up warning flares or barriers simply because it did not create the sinkhole? What if DOT designed a four-way traffic signal which was green for all directions at the same time? Would there be no duty on the part of the County to warn travelers to disregard the signals, if it knew about the hazard? A duty to warn may exist in both situations, as well as in this case, and this issue is properly resolvable by a jury.
NOTES
[1] This suit was initially filed against Margarita D. Tous, the driver of the car which struck the decedent, and Jorge Tous, the co-owner of the car. Orange County and the Florida Department of Transportation (D.O.T.) were later joined as defendants. Settlement was made with the Tous' and they were dismissed from the action. D.O.T. successfully sought severance and transfer of the case against it to Leon County. See Florida Department of Transportation v. McFadden, 432 So.2d 676 (Fla. 5th DCA 1983).
[2] The statement in the dissent that Orange County's traffic engineers knew that "pedestrians normally can and do rely on red lights at intersections to cross streets" is incorrect. One of the traffic engineers was asked if pedestrians could normally assume that when the red light appeared for eastbound traffic on Fairbanks it would be safe to cross the highway. The exact response was:

My experience and feeling is that in the absence of the crosswalk, that's the number one clue that things are not as they should be for crossing.
And secondly, if you're going to cross the street, whether [sic] there is no protection of even the painted crosswalk, my feelings are that each one is expected to observe the traffic more importantly than the signal.
That is to say, if a Mack truck's bearing down on you, obviously you should not step off the curb.
He further testified that he did not consider it advisable to rely on the red traffic signal when crossing a street.
[1] Manucy v. Manucy, 362 So.2d 478 (Fla. 1st DCA 1978); U.S. Fire Ins. Co. v. Progressive Casualty Ins. Co., 362 So.2d 414 (Fla. 2d DCA 1978); Booker v. Okaloosa Board of Public Instruction, 323 So.2d 619 (Fla. 1st DCA 1975).
[2] § 768.28, Fla. Stat. (1985).
[3] Originally this suit was brought against both DOT and Orange County, but DOT was successful in transferring the venue as to it, to Tallahassee.
[4] Henry Dickson, Chief Signal Technician for Orange County, testified as follows:

Q. Would you expect a pedestrian to rely upon traffic signals for vehicular traffic ...?
A. They do, although it's certainly not advisable.
(R. 805-806).
Q. Well, Mr. Dickson, at that intersection if you have a pedestrian at the northwest corner intending to cross to the southwest corner, would you agree that the average pedestrian lay person ... would not be aware ... there would be a green light for westbound traffic [without a warning]?
A. Basically, yes, uh-huh.
(R. 820).
[5] 19 McQuillin, Municipal Corporations, § 54.129 (3d Ed. 1985).

In the absence of regulations to the contrary or obvious defects a pedestrian is entitled to use every part of the street, and is entitled to assume that every part of the street is reasonably safe for crossing ... . only ordinary care is required.
[6] See State Dep't of Highway Safety and Motor Vehicles v. Kropff, 491 So.2d 1252 (Fla. 3rd DCA 1986) (police officer failed to properly secure an accident scene); De Herrera v. Gulf and Western Indus., Inc., 476 So.2d 691 (Fla. 3rd DCA 1985), review denied, 488 So.2d 67 (Fla. 1986) (dangerous intersection due to increased traffic and spillage of debris on road); 19 McQuillin, Municipal Corporations, §§ 54.13, 54.12, 54.64b (3d Ed. 1985).
[7] In Neilson, the suit was against both DOT and the County, for a defective traffic control. In Carter v. City of Stuart, 468 So.2d 955, 956 (Fla. 1985), the supreme court, in discussing Neilson, specifically stated that decisions regarding the installation and placement of traffic control devices are planning level decisions which are immune from liability as exercises of the government's police power, but that a failure to warn is not so immune.
[8] Compare Trianon Park Condo v. City of Hialeah, 468 So.2d 912 (Fla. 1985) and Everton v. Willard, 468 So.2d 936 (Fla. 1985).