920 So.2d 54 (2005)
Huguette ORLANDO, as personal representative of the Estate of Caleb Orlando, deceased, Appellant,
v.
BROWARD COUNTY, FLORIDA, the City of Dania Beach, and School Board of Broward County, Appellees.
No. 4D04-4868.
District Court of Appeal of Florida, Fourth District.
December 21, 2005.
Rehearing Denied February 22, 2006.
*56 Lawrence B. Friedman of The Friedman Law Firm, P.A., Boca Raton, for appellant.
Dorsey C. Miller, III of Haliczer, Pettis & Schwamm, P.A., Fort Lauderdale, for appellee School Board of Broward County.
GROSS, J.
In this case we hold that sovereign immunity bars a mother's claim against a school board for the death of her son. The school board's decision on when to begin and end the school day was a discretionary, planning-level decision. The facts of the case do not give rise to a situation where the school board had an operational level duty to warn of a dangerous condition that it created, which was not readily apparent, so that it constituted a trap for the unwary.
Huguette Orlando, as the mother and guardian of her minor son, Caleb Orlando, filed a negligence complaint against the School Board of Broward County and other defendants, pursuant to the Wrongful Death Act, section 768.16, et seq., Florida Statutes (1999). The case arose out of a 1999 accident where an automobile struck and killed Caleb while he was crossing the street west of the intersection at Southeast 5th Avenue and Sheridan Street in Dania Beach.
Caleb was a 13-year-old eighth grader at Olsen Middle School. The school's hours of operation were from 9:00 a.m. until 4:00 p.m. The School Board provided bus transportation for Olsen Middle students who lived beyond a two-mile radius of the school. At the beginning of the 1997 school year, Caleb lived outside of the two-mile radius and was eligible for bus transportation. In October 1997, Caleb's family moved to a residence within the two-mile radius. Despite living within the radius, Caleb was permitted to ride the school bus until December 1998.
When the mother learned that her son was no longer permitted to ride the school bus, she protested at the school's office. Concerned for her son's safety, she asked the person in charge of bus transportation if there were any exceptions to the two-mile radius rule or if anything could be done to restore her son's bus transportation privileges. The person advised her that Caleb was ineligible for bus transportation and there were no exceptions to the policy.
On May 26, 1999, Caleb was dismissed from school at 4:00 p.m. At 4:15 p.m., Caleb was at Sheridan Street, about 30 feet west of the intersection with Southeast 5th Avenue. This intersection is within a two-mile radius of the school and does not have a crossing guard. There was no school zone at the intersection. Attempting to cross the street, Caleb stepped into the westbound lane of Sheridan Street, against traffic and not at a crosswalk. He passed in front of a transit bus. As Caleb moved past the bus, he was struck and killed by a passing motorist.
Olsen Middle is surrounded by busy streets, where peak traffic occurred between the hours of 7:30 a.m. to 9:00 a.m. *57 and 4:30 p.m. to 6:00 p.m. At the location on Sheridan Street, where the accident occurred, the speed limit was 45 miles-per-hour. The School Board was aware that hazardous walking routes existed within a two-mile radius of Olsen Middle; Caleb was the fourth child in a seven-year period to die in transit to or from the school, all within the two-mile radius.
The mother first argues that the School Board negligently decided to operate Olsen Middle School from 9:00 a.m. to 4:00 p.m., thereby exposing the students to rush hour traffic on the surrounding streets, and creating a foreseeable zone of risk, which imposed a duty on the School Board to take precautions to protect the children.
Article X, section 13 of the Florida Constitution provides "absolute sovereign immunity for the state and its agencies absent waiver by legislative enactment or constitutional amendment." Cir. Ct. of the Twelfth Jud. Cir. v. Dep't of Natural Resources, 339 So.2d 1113, 1114 (Fla.1976). Section 768.28, Florida Statutes (1999), "constitutes a limited waiver of the states sovereign immunity." Id. at 1116. Section 768.28(5) provides that the "state and its agencies and subdivisions [are] liable for tort claims in the same manner and to the same extent as a private individual under like circumstances."
Even though the statute creates a limited waiver of sovereign immunity, certain discretionary, planning-level governmental functions remain immune from tort liability. See, e.g., Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1022 (Fla.1979) (holding that although section 768.28 evinces the intent of our legislature to waive sovereign immunity on a broad basis, nevertheless, certain "discretionary" governmental functions remain immune from tort liability.). Setting the time when a given school opens or closes is a discretionary, planning-level function of the School Board, not subject to the waiver of sovereign immunity.
In Commercial Carrier Corp., the supreme court set forth a preliminary test to determine whether a governmental function is a discretionary one:
(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?
Id. at 1019 (quoting Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440, 445 (1965)). If these questions can be "clearly and unequivocally answered in the affirmative," then the challenged act, omission, or decision can be classified as a discretionary, planning-level governmental process. Id.
In this case, the four questions can clearly and unequivocally be answered in the affirmative. The decision when to open and close a school involves a governmental policy, program, or objective. Setting a beginning and ending of a school day is essential to the School Board's objective of educating children. Determining school hours involves the exercise of judgment and expertise. The length of the school day must meet educational, health, and other requirements, obligating the School Board to coordinate the release of hundreds of schools at locations all over *58 Broward County. Finally, pursuant to section 230.23(4)(f), Florida Statutes (1999) (now renumbered § 1001.42(4)(f)), the School Board has the power to "adopt policies for the opening and closing of schools." Under the Commercial Carrier preliminary test, the decision when to open and close a school is a planning-level decision entitled to sovereign immunity. See Harrison v. Escambia County Sch. Bd., 419 So.2d 640 (Fla. 1st DCA 1982), approved, 434 So.2d 316 (Fla.1983) (holding that designation of the location of a school bus stop is a planning-level decision of a School Board).
The mother seeks to avoid the operation of sovereign immunity by arguing that the School Board's decision created "a hidden trap or dangerous condition for which there was no proper warning." Dep't of Transp. v. Neilson, 419 So.2d 1071 (Fla.1982). "[W]hen a governmental entity creates a known dangerous condition, which is not readily apparent to persons who may be injured by the condition, a duty at the operational-level arises to warn the public of, or protect the public from, the known danger." Payne v. Broward County, 461 So.2d 63, 65 (Fla.1984) (citing City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla.1982)).
However, a dangerous condition that is readily apparent to the public does not fit within this exception to the doctrine of sovereign immunity. The danger of jaywalking on a busy street during rush hour is readily apparent to pedestrians, so that a governmental entity has no duty to warn of such an open and obvious hazard. See Masters v. Wright, 508 So.2d 1299, 1300 (Fla. 4th DCA 1987). As the supreme court has written, "[a] governmental entity has no duty to warn pedestrians of the routine danger of crossing the street in midblock." Payne, 461 So.2d at 66.
Payne is instructive on this issue. In Payne, a high school student walking home from school was fatally injured as she tried to cross Rock Island Road. Id. at 64. Coral Springs High School was located at the northeast intersection of Rock Island Road and Sample Road. Id. The student followed the pedestrian sidewalk that ran 125 feet north of Sample Road until it ended at Rock Island. Id. At this point she attempted to cross Rock Island Road, where she was struck and killed by a motorist. Id.
The student's parents sued Broward County, the School Board, the City of Coral Springs, and others who were dismissed at trial. The trial court entered a directed verdict in favor of the School Board. Id. The jury attributed 40% of the liability to the County. Id. The County appealed to this court, which reversed the final judgment, holding the county was immune from tort liability. Id. at 64-65. This court also certified questions to the supreme court, including the following:
Was this [the opening of the Rock Island Road intersection] the creation of a known danger which requires a warning or an aversion of danger?
Id. at 65.
The supreme court in Payne recognized that the County both created and knew of the conditions at the intersection where the student was killed. However, the court concluded that the intersection was "not a trap" and that "whatever danger there was in crossing the street midblock was open and obvious." Id. at 66.
In this case, the School Board is less culpable than the County in Payne. The School Board had knowledge of the traffic conditions on Sheridan Street, but it did not create the dangerous condition. As in Payne, the dangerous condition here was open and obvious, no "greater than that existing anywhere it is possible to cross a road midblock." Id. This was not a situation presenting an "operational level duty *59 to warn of a known dangerous condition created by the public entity not readily apparent, constituting a trap for the unwary." Duval County Sch. Bd. v. Dutko, 483 So.2d 492, 495 (Fla. 1st DCA 1986).
The mother relies heavily on Dutko, but it is distinguishable. Dutko held that the School Board had created a "trap for the unwary" by its continued maintenance of a bus stop where waiting children were exposed to dangers that were not readily apparent; the hidden danger was the often-occurring, erratic actions of drivers who "left the roadway and drove upon the grassy shoulder, requiring waiting children to scurry out of the way of wayward vehicles." Id. at 495. In this case, there was no hidden danger. The School Board did not create or overlook the dangerous condition, the traffic on Sheridan Street, which was readily apparent. The School Board did not have the authority to take precautionary measures to alleviate the traffic or slow it down. See Padgett v. Sch. Bd. of Escambia County, 395 So.2d 584 (Fla. 1st DCA 1981) (stating local government and the Department of Transportation have a statutory duty of installing and maintaining school traffic control devices); see also Garcia v. Metro. Dade County, 561 So.2d 1194 (Fla. 3d DCA 1990).
We have considered the mother's remaining point on appeal, concerning the School Board's Empty Seat Policy, and find it to be without merit. Under section 234.01, Florida Statutes (1999), the School Board did not have a statutory duty to provide bus transportation to students who lived less than two miles from school.
Affirmed.
STONE and HAZOURI, JJ., concur.