434 So.2d 316 (1983)
John Frederick HARRISON, et al., Petitioners,
v.
ESCAMBIA COUNTY SCHOOL BOARD, Respondent.
No. 62629.
Supreme Court of Florida.
July 7, 1983.
*317 William C. Owen and David S. Dee of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tallahassee, for petitioners.
Robert W. Kievit of the Law Offices of Louis F. Ray, Jr., Pensacola, for respondent.
Chris W. Altenbernd of Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, for The School Bd. of Hillsborough County and The Ins. Co. of North America, amicus curiae.
McDONALD, Justice.
The First District Court of Appeal has certified its opinion in Harrison v. Escambia County School Board, 419 So.2d 640 (Fla. 1st DCA 1982), as passing upon questions of great public importance. We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution. We approve the district court's affirmation of the trial court's dismissal of the complaint against the school board.
While walking toward a school bus stop on the morning of November 10, 1977, Harrison's eleven-year-old son stepped backwards into the roadway and was struck and killed by a passing car.[1] Harrison sued the driver of the car and, six months later, amended his complaint to include the Escambia *318 County School Board. The amended complaint charged, inter alia, that the school board violated section 234.112, Florida Statutes (1977),[2] which reads as follows:
Each district school board shall establish school bus stops as necessary at the most reasonably safe locations available. Where unusual traffic hazards exist at school bus stops on roads maintained by the state outside of municipalities, the Department of Transportation, in concurrence and cooperation with and upon request of the district school board, shall place signs at such bus stops warning motorists of the location of the stops.[3]
*319 The school board moved for dismissal for failure to state a cause of action, claiming that: 1) the actions alleged to have been negligent involved discretionary or planning level decisions and, therefore, were immune from tort liability; 2) the school board had not waived sovereign immunity; and 3) the complaint failed to show that the accident occurred at a designated school bus stop. The trial court agreed with the school board and granted the motion to dismiss.
In its thoughtful and well-reasoned majority opinion the district court discussed the allegations in the amended complaint and concluded that the "gravamen of the complaint is that the county negligently decided to locate the school bus stop on one street rather than another, and negligently failed to post warning signs." 419 So.2d at 642-43. Using the four-part test recommended by Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), the district court held that selecting locations for school bus stops is a planning decision protected under the discretionary governmental function exception to section 768.28, Florida Statutes (1977). In reaching its conclusion the district court relied on the planning level/operational level analysis in Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968), which this Court adopted in Commercial Carrier. Applying the Johnson analysis, the court stated:
It appears to us that to require the school board to decide on school bus stop locations under the threat of tort liability in the event a judge or jury at some later date might determine that the chosen location constituted a safety hazard to an individual child injured enroute to it, would present some difficulties. It is obvious that some potential for injury to a child would exist at any location where motor vehicle traffic exists, yet it would be totally impracticable and indeed impossible to locate a bus stop at any place where this would not be true.
419 So.2d at 644. The district court concluded that "sufficient justification exists for a holding that the school board's function in selecting school bus stop sites is not one that should `be subject to scrutiny by judge or jury as to the wisdom of their performance.'" Id. at 645, quoting Commercial Carrier, 371 So.2d at 1022.
Before this Court Harrison claims that: 1) the school board is subject to tort liability because it created a known dangerous condition not readily apparent to persons who could be injured by the condition; 2) the school board failed to comply with the statutory direction contained in section 234.112; and 3) because the school board acted pursuant to statutorily defined policy it must show that deciding where to locate the bus stop represents a considered decision in implementing an overall policy or authority. Because of our holding on Harrison's first two points, we will not discuss his last point.
To start, we note that the accident did not happen at the school bus stop. As a general rule, if a public school entity provides transportation for its pupils, it owes a duty of care with regard to that transportation. Annot., 34 A.L.R.3d 1210 (1970). School boards, however, are not insurers of students' safety, Benton v. School Board of Broward County, 386 So.2d 831 (Fla. 4th DCA 1980), and a school board's control over its students regarding transportation extends from when a school bus picks up a student at a bus stop to the school door. When a student is injured before reaching a designated bus stop, or after leaving one, that student is outside the board's duty of care because the board's duty stems from the fact of the school board's physical custody of its students. Therefore, strictly speaking, Harrison's son had not come within the board's care at the time of the accident.[4]
Harrison claims, however, that section 234.112 imposes a mandatory duty on *320 the school board to locate bus stops at the "most reasonably safe locations available." As did the district court, we disagree that this section abrogates the board's sovereign immunity. In making this claim Harrison relies on A.L. Lewis Elementary School v. Metropolitan Dade County, 376 So.2d 32 (Fla. 3d DCA 1979). That case, however, dealt with a different statute, section 316.1895, Florida Statutes (1975). Section 316.1895 mandates that the Department of Transportation adopt a uniform system of traffic- and pedestrian-control devices for use on streets and highways surrounding all schools and that counties and municipalities install and maintain such devices in conformity with the uniform system. In A.L. Lewis the third district found that the sovereign immunity which normally attaches to the decision to install traffic-control devices could not prevail in the face of the statutory imposition of a duty by section 316.1895.
Section 234.112, on the other hand, merely states that school boards shall establish school bus stops as necessary. This is not the same as section 316.1895's mandate that devices be installed on streets and highways surrounding all schools. We agree with the district court that the statutory words "most reasonably safe locations available" have no fixed or readily ascertainable meaning and that in deciding on the location of a school bus stop a school board makes a policy or planning level decision. We find, therefore, that deciding where school bus stops will be located is, under the doctrine of sovereign immunity, a decision that will not give rise to tort liability.[5]
As noted by the district court, it would be impossible to locate a school bus stop at any place which would not have some potential danger for some student. Some locations may be more dangerous than others, however, and it is to those locations that section 234.112 is directed. The decision as to where to locate bus stops necessarily requires the utilization of governmental planning and discretion.
We also hold that Harrison's amended complaint[6] fails to allege the creation of a dangerous condition or trap which would necessitate giving notice of the danger, as needed under City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982), and Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982), in order to circumvent the school board's immunity. In Collom we held that
once a governmental entity creates a known dangerous condition which may not be readily apparent to one who could be injured by the condition, and the governmental entity has knowledge of the presence of people likely to be injured, then the governmental entity must take steps to avert the danger or properly warn persons who may be injured by that danger... . We find it unreasonable to presume that a governmental entity, as a matter of policy in making a judgmental, planning-level decision, would knowingly create a trap or a dangerous condition and intentionally fail to warn or protect the users of that improvement from the risk. In our opinion, it is only logical and reasonable to treat the failure to warn or correct a known danger created by government as negligence at the operational level.
419 So.2d at 1086 (emphasis in original, citation omitted). Likewise, in Neilson we concluded that the failure to warn of a known danger created by the governmental body is a negligent omission at the operational level which may serve as the basis for a cause of action.
Under Collom, therefore, a plaintiff would have to allege specifically the existence *321 of an operational level duty to warn the public of a known dangerous condition which, created by it and being not readily apparent, constitutes a trap for the unwary. Neilson also requires the pleading of a known trap or known dangerous condition. Collom and Neilson require specific allegations of fact instead of generalities. Harrison's amended complaint did not meet this burden. The complaint merely alleges "unusual traffic hazards" and is insufficient to state a cause of action under Collom or Neilson.[7]
We hold that the designation of school bus stops is a planning level decision which is immune from tort liability under the doctrine of sovereign immunity and that Harrison's amended complaint failed to allege sufficiently the existence of a known trap or dangerous condition which would create an operational level duty to post warnings. We approve the district court's affirming of the trial court ruling.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON and SHAW, JJ., concur.
ADKINS and EHRLICH, JJ., dissent.
NOTES
[1] As pointed out by the district court, before that court Harrison referred to facts not pled in the trial court. Harrison v. Escambia County School Bd., 419 So.2d 640, 642 n. 3 (Fla. 1st DCA 1982). Harrison refers to those same unpled facts before this Court.
[2] The pertinent portions of the count against the school board read as follows:

2. Defendant, ESCAMBIA COUNTY SCHOOL BOARD, is a political subdivision of the State of Florida and has waived sovereign immunity pursuant to Sec. 455.06 and Sec. 768.28, Fla. Stat. (1977).
3. Plaintiff has presented his claim against defendant SCHOOL BOARD in writing to the appropriate state agencies, as required by Sec. 768.28(6), Fla. Stat. (1977) and said claim has been denied.
4. Defendant, ESCAMBIA COUNTY SCHOOL BOARD, is charged by law with operating a school bus transportation system for pupils enrolled in the public schools of Escambia County, Florida, and the operation of such transportation system includes the designation and operation of safe school bus routes and bus stops.
5. On or about November 10, 1977, the decedent, FREDERICK COLEY HARRISON, was enrolled in the public schools of Escambia County, Florida.
6. Sometime prior to November 10, 1977, defendant School Board designated a school bus stop near the intersection of Candy Lane Road and C-95A in Escambia County, Florida. In so designating said school bus stop, the defendant School Board violated § 234.112, Fla. Stat. (1977) in that said school bus stop was not designated at the most reasonably safe location available in the vicinity. The violation of said statutory provision by defendant School Board constitutes negligence on its part as a matter of law.
7. The school bus stop designated by defendant School Board at the intersection of Candy Lane Road and C-95A was attended by unusual traffic hazards and by virtue of § 234.112, Fla. Stat. (1977), the defendant School Board was obligated to request the Department of Transportation to place a sign at said school bus stop warning motorists of its location. The defendant School Board violated said statutory provision by failing to make any such request and this violation constitutes negligence on its part as a matter of law.
8. As of November 10, 1977, the defendant School Board knew or should have known that its designated school bus stop at the intersection of Candy Lane Road and C-95A in Escambia County, Florida, was attended by unusual traffic hazards which created a dangerous condition for the children approaching or congregating in the vicinity of this school bus stop in anticipation of being picked up by school buses operated by the School Board. Said defendant was negligent in failing to take appropriate measures to warn motorists of the location of said school bus stop so as to thereby mitigate such dangerous condition or in the alternative to arrange a safer location of said school bus stop.
9. At about 8:30 a.m. on November 10, 1977, Frederick Coley Harrison, together with two other children, who were students in the Escambia County School system, were enroute to the school bus stop located, maintained and operated by the defendant School Board at the intersection of Candy Lane Road and C-95A, Escambia County, Florida, for the purpose of boarding the school bus designated for their respective schools. In order to reach said school bus location, plaintiff's decedent found it necessary to travel along the perimeter of C-95A in a northerly direction. At the aforementioned time and place, Frederick Coley Harrison was struck and killed by an automobile operated along C-95A in a northerly direction. The death of Frederick Coley Harrison, deceased, was directly and proximately caused by the negligence of defendant School Board as herein alleged.
10. As a result of the negligence of defendant School Board as herein alleged, and the resulting death of Frederick Coley Harrison, deceased, JOHN FREDERICK HARRISON and Jean Harrison, his wife, as the surviving parents of Frederick Coley Harrison, deceased, have incurred and sustained great mental pain, suffering and anguish and will continue to do so in the future. Said parents, JOHN FREDERICK HARRISON and Jean Harrison, his wife, are obligated to and did pay necessary medical and/or funeral expenses due to decedent's injury and death.
[3] We, like the district court, are unable to determine the applicability of the second sentence of § 234.112 to this case because the road designation, C-95A, appears to pertain to a county-maintained, rather than a state-maintained, road. As the district court concluded, this sentence appears to be merely enabling legislation. 419 So.2d at 642 n. 4.
[4] School Bd. of Broward County v. Surette, 394 So.2d 147 (Fla. 4th DCA), review dismissed, 399 So.2d 1146 (Fla. 1981), is distinguishable because the accident occurred at a designated school bus stop which had been so poorly maintained that students waiting for their buses had to stand in the roadway.
[5] Our research has turned up few cases concerned with liability for the negligent location of a bus stop or for injuries occurring away from bus stops. The few cases on point, however, uniformly find either sovereign immunity or no duty. Cobb v. Fox, 113 Mich. App. 249, 317 N.W.2d 583 (1982); Pratt v. Robinson, 39 N.Y.2d 554, 384 N.Y.S.2d 749, 349 N.E.2d 849 (1976); McNees v. Scholley, 46 Mich. App. 702, 208 N.W.2d 643 (1973); Vogt v. Johnson, 278 Minn. 153, 153 N.W.2d 247 (1967); Price v. York, 24 Ill. App.2d 450, 164 N.E.2d 617 (1960).
[6] Supra n. 2.
[7] Compare the portions of Collom's complaint set out at 419 So.2d at 1084-85.