456 So.2d 1204 (1984)
Angela EMIG, Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. AW-340.
District Court of Appeal of Florida, First District.
September 5, 1984.
Rehearing Denied October 29, 1984.
*1205 Frank W. Goddard and Michael E. Seelie, Penland, Seelie, Morgan & Penland, Jacksonville, for appellant.
*1206 Richard L. Randle, Slater & Randle, Jacksonville, for appellee.
SHIVERS, Judge.
Emig appeals the order of the trial court which dismisses with prejudice her second amended complaint. Appellant contends that the trial court erred in determining that the doctrine of sovereign immunity applies to the instant case. We reverse and remand.
Appellant filed a complaint against the appellee, State of Florida, Department of Health and Rehabilitative Services (HRS) which was subsequently twice amended. The second amended complaint (complaint) charged HRS with negligence stemming out of an alleged incident on May 12, 1979, when three juvenile delinquents escaped from an HRS facility, the "Youth Detention Center" (Center). After the escape the juveniles allegedly entered Emig's home and assaulted, battered and robbed her. It is alleged that HRS ran the Center, that HRS had a duty to exercise reasonable care in the operation and supervision of the facility and its inmates, that the three juvenile delinquents were in the direct custody, control and supervision of HRS, and that HRS well knew the criminal propensities of the juvenile delinquents.
In Count I of the complaint appellant alleged the following negligent acts or omissions: (1) failing to have security measures at the Center so that the whereabouts of inmates could be ascertained on an hourly basis; (2) failing to have an emergency method of notifying authorities in the event of escape; (3) failing to have a procedure for the employees of the youth detention center in the event of an escape; (4) failing to notify appropriate authorities or take any action after the escape. In Count II the complaint alleged negligence in HRS's failure to warn the public, particularly the public living in the immediate vicinity of the Center, of a known hazardous condition, i.e., the custody of dangerous delinquents.
The law concerning the doctrine of sovereign immunity and its limited waiver in Florida is set forth in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). To determine whether the doctrine is applicable or waived in a given case our Florida Supreme Court in Commercial Carrier adopted the analysis of Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968), and distinguished between governmental decisions made at the "planning level" and those made at the "operational level." Planning level decisions involve discretionary governmental functions which remain immune from tort liability. Whether an alleged negligent act involves the planning or operational level of decision-making is a question to be determined on a case by case basis. In general, the object of this analysis is to isolate those governmental decisions which are so basic to the act of governing that to subject the decision to judicial review would amount to a violation of the separation of powers. "[C]ertain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance." 371 So.2d at 1022. This planning level decision-making is to be distinguished from the operational level which involves ministerial functions for which the State should be responsible under ordinary tort principles just as any private individual would be under like circumstances. In the instant case, we think that all but one of the allegations of negligence set forth in Count I fall into the operational level category.
Under Commercial Carrier, the starting point for analysis is to consider the allegations of negligence in light of a four question test derived from Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965). The questions are:
(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which *1207 would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission or decision?
371 So.2d at 1019 (quoting from Evangelical, 407 P.2d at 445). If these preliminary questions can clearly and unequivocally be answered in the affirmative, the challenged act or omission is discretionary and immune. If one or more of the questions results in a negative answer, however, further inquiry may be necessary.
In the instant case, only one of the allegations of negligence in Count I results in four affirmative answers. Appellant alleges negligence in that HRS failed to have a security measure at the Center to determine the whereabouts of inmates at least every hour. This decision involves a basic governmental policy, i.e., a policy decision must be made to determine how tight security is to be made at any particular facility. This is a decision which requires the exercise of discretionary judgment and expertise on the part of HRS. A decision in regard to the type of security measures employed is essential to the accomplishment of HRS policy in regard to the Center, and HRS has the lawful authority to make such a decision. Therefore, sovereign immunity should apply to bar appellant's claim based on this allegation.
Appellant's other allegations of negligence, however, result in mostly negative answers to the Evangelical questions. None of those allegations involve basic governmental policies, programs, or objectives. For example, we doubt that any HRS decision-maker weighed the pros and cons of whether to notify authorities after the escape sub judice and decided, as a matter of governmental policy, that HRS should not notify appropriate authorities. A decision as to whether to notify proper authorities after an escape of dangerous delinquents does not involve the exercise of agency expertise on the part of HRS, nor would a decision to notify authorities jeopardize the youth detention center program. In short, it would be difficult to characterize these alleged omissions of HRS as other than operational, ministerial, or housekeeping functions. We do not think that the judicial branch of government would be sitting in judgment of the executive branch on a basic policy consideration if a court or jury were to determine, for example, that HRS employees should have notified authorities or taken some in-house action after the escape. We think that all of the allegations in Count I, except for the first, more clearly involve decisions at the operational level than did the allegations in Smith v. Department of Corrections, 432 So.2d 1338 (Fla. 1st DCA 1983), and Bellavance v. State, 390 So.2d 422 (Fla. 1st DCA 1980), rev. denied, 399 So.2d 1145 (Fla. 1981).
Harrison v. Escambia County School Board, 434 So.2d 316 (Fla. 1983), relied upon by appellee, is distinguishable from the instant case based on the nature of the allegations of negligence involved. In Harrison, the gravamen of the complaint was that the County negligently decided to locate a school bus stop on one street rather than another. The court found that in deciding upon the location of a school bus stop, a school board makes a policy or planning level decision. The court quoted approvingly the conclusion of the District Court of Appeal that the school board's function in selecting school bus stop sites is not one that should be subject to scrutiny by judge or jury as to the wisdom of the board's performance. Id. at 319. As discussed supra, we do not think this same conclusion can be reached as to most of the allegations of negligence in Count I here.
As to the allegation contained in Count II of appellant's complaint, concerning the failure to warn, we find that City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982), is controlling. Collom held that when a governmental entity creates a known dangerous condition, which is *1208 not readily apparent to persons who could be injured by the condition, a duty at the operational level arises to warn the public or protect the public from the known danger. In the instant case, the complaint clearly alleges that the danger was one well known to HRS. The complaint, however, does not allege that the known dangerous condition is not readily apparent to persons who could be injured by the condition. Therefore, it was not error to dismiss this count. We think that this count should not have been dismissed with prejudice, however, at this stage of the pleadings, and that appellant should have the opportunity to further amend her complaint to allege proper ultimate facts if she can. Cf. Kirkland v. State, Department of Health and Rehabilitative Services, 424 So.2d 925 (Fla. 1st DCA 1983) (error to enter final judgment without granting leave to amend where plaintiff might allege ultimate facts to find waiver of sovereign immunity).
Accordingly, the order of dismissal with prejudice is REVERSED and this cause is REMANDED for proceedings consistent with this opinion.
ZEHMER, J., concurs.
THOMPSON, J., dissents without written opinion.