801 So.2d 1015 (2001)
Y. Aaron KAWEBLUM, as Personal Representative of Sara KAWELUM, Deceased, Appellant,
v.
THORNHILL ESTATES HOMEOWNERS ASSOCIATION, INC., a Florida corporation, and Lake Worth Drainage District, Appellees.
No. 4D99-177.
District Court of Appeal of Florida, Fourth District.
December 19, 2001.
*1016 W. Jeffrey Barnes of J. Barnes & Associates, P.A., Fort Lauderdale, for appellant.
Mark B. Kleinfeld of Mark B. Kleinfeld, P.A., Palm Beach, and H. Michael Easley of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for Appellee-Lake Worth Drainage District.
STEVENSON, J.
In February of 1998, Sara Kaweblum took a walk outside her son's Thornhill Estates home and fell into a drainage canal. Kaweblum struck her head on a rock and drowned. The canal is owned and operated by the Lake Worth Drainage District and separates the Thornhill Estates homes from a golf course. Kaweblum's son, Y. Aaron Kaweblum, as personal representative of her estate, filed a negligence suit against the District. In short, Kaweblum's complaint alleged that the canal had a very steep drop-off on the bank near Kaweblum's home and that the District was negligent in designing and constructing the canal in this manner and in failing to warn of the steep slope. The trial court entered final summary judgment in favor of the District, finding that the claims were barred by the doctrine of sovereign immunity. We affirm.

Liability for failure to "finish the job"
It is well-settled that "[a] governmental entity is immune with respect to its discretionary, judgmental, and planning decisions" but that "a governmental entity is exposed to liability for operational decisions." Fla. Dep't of Transp. v. Allen, 768 So.2d 496, 496 (Fla. 4th DCA 2000)(citing Cygler v. Presjack, 667 So.2d 458, 460 (Fla. 4th DCA 1996)), review denied, 789 So.2d 343 (Fla.2001). Here, Kaweblum contends that, since the District elected to improve or upgrade the canal's banks on the opposite side of his home, this subjected the District to "operational" liability for its failure to upgrade the other side or, as Kaweblum puts it, to "finish the job." We reject this argument because the cases uniformly hold that a governmental entity's decision to upgrade or improve or not to upgrade or improve is a planning level function for which there can be no tort liability. See Trianon Park Condo. Ass'n v. City of Hialeah, 468 So.2d 912, 920 *1017 (Fla.1985); see also Dep't of Transp. v. Konney, 587 So.2d 1292, 1295 (Fla.1991); Tucker v. Gadsden County, 670 So.2d 1053, 1054 (Fla. 1st DCA), review denied, 679 So.2d 773 (Fla.1996); Barrera v. State, Dep't of Transp., 470 So.2d 750 (Fla. 3d DCA), review denied, 480 So.2d 1293 (Fla. 1985). We affirm the trial court's finding that Kaweblum's claim that the District was negligent in designing and constructing the canal is barred by sovereign immunity.

Liability for failure to warn
Under Florida law, "when a governmental entity creates a known dangerous condition, which is not readily apparent to persons who could be injured by the condition, a duty at the operational-level arises to warn the public of, or protect the public from, the known danger." City of St. Petersburg v. Collom, 419 So.2d 1082, 1083 (Fla.1982)(emphasis in original). The duty to warn is limited, however, and arises only where the hazard is "`so serious and so inconspicuous ... that it virtually constitutes a trap.'" Dep't. of Transp. v. Stevens, 630 So.2d 1160, 1162 (Fla. 2d DCA 1993)(quoting Justice Kogan's concurring opinion in Dep't. of Transp. v. Konney, 587 So.2d 1292, 1299 (Fla.1991)), review denied, 640 So.2d 1108 (Fla.1994); see also Cygler v. Presjack, 667 So.2d 458, 461 (Fla. 4th DCA 1996)(citing Stevens for this proposition).
Appellant argues that "the steep and precipitous drop-off at the border of the L-49 canal where it abuts Appellant's residence creates a danger which is not readily apparent; ... this condition presents a hidden danger or trap created by the LWDD of which it had knowledge yet failed to warn."[1] Kaweblum's complaint and the affidavit filed in opposition to the District's motion for summary judgment allege that (1) the canal is not visible from Kaweblum's home; (2) there are no lights near the canal; (3) there are no signs or barriers warning of the canal's presence; (4) the slope of the north side of the embankment from which Sara Kaweblum fell is .8-1 to 1, very steep when compared to the almost 4 to 1 ratio of the opposing embankment; and (5) the District currently requires residential canals to slope at a 1.5 to 1 ratio and, ideally, at 2 to 1.
Superimposed on appellant's already difficult burden of showing a "hidden trap" to overcome the sovereign immunity issue are the legal principles of the "body of water" cases:
The rule supported by the decided weight of authority is that the owner of artificial lakes, fish ponds, mill ponds, gin ponds and other pools, streams and bodies of water are [sic] not guilty of actionable negligence on account of drownings therein unless they are constructed so as to constitute a trap or raft or unless there is some unusual element of danger lurking about them not existent in ponds generally.
Allen v. William P. McDonald Corp., 42 So.2d 706, 706 (Fla.1949); Saga Bay Prop. Owners Ass'n v. Askew, 513 So.2d 691, 693 (Fla. 3d DCA 1987)(stating that an owner is not liable for a "drowning in a body of water, natural or artificial, unless there is some unusual danger not generally existing in similar bodies of water or the water contains a dangerous condition constituting a trap"), review denied, 525 So.2d 876 (Fla. 1988).
The allegations in Kaweblum's complaint, and the supporting affidavits, fail to support the claim that the canal in question presents a unique danger generally not existing with similar bodies of water or *1018 that the canal contains a dangerous condition virtually constituting a trap. A canal's "sandy embankment with its sudden drop-off" was not held to render such body of water a hidden trap in Scott v. Future Investments of Miami, Inc., 559 So.2d 726, 727 (Fla. 4th DCA 1990). Accord Corcoran v. Village of Libertyville, 73 Ill.2d 316, 22 Ill.Dec. 701, 383 N.E.2d 177 (1978)(finding no hidden trap where drowning occurred in a drainage ditch which allegedly had a deceptively steep slope leading into it). Similarly, a "sharp drop-off" in depth within the body of water has not been held to present an unusual element of danger. See Hendershot v. Kapok Tree Inn, Inc., 203 So.2d 628 (Fla. 2d DCA 1967).
The decision in Allen v. William P. McDonald Corp. would at first seem to support reversal in this case, but upon closer inspection, it does not. There, a two and a half year old boy drowned in a pond located about 300 feet from his home. See 42 So.2d at 706. In reversing the dismissal of the complaint, the court held that the allegations of a sandy white bank with a steep slope adjacent to a canal was sufficient to place the allegations of the complaint within the exception to the general rule. In Allen, though, in considering the steep approach to the pond, the court was clearly speaking more so to the attractive nuisance aspect of the case:
A spoil bank of white sand adjacent to an artificial lake or pond is an unusual element of danger and will render it more attractive than the ordinary pond. There is nothing more enticing to a child or a gang of children than a sand pile. One of the most common accessories of a child's play ground equipment is a sand box or a sand pile.... It is just as natural for children of tender years to play on a sand pile as it is for their elder brothers to loaf around a sorority house or their grandfathers to respond to a dinner call.
. . . .
... It is common knowledge that some ponds are so constructed that a child may easily slide down the spoil banks into water as much as ten feet deep with nothing but gravity to retard its potential journey to eternity.

Id. at 707 (emphasis added). Thus, nothing in Allen suggests an approval of the contention that, outside of attractive nuisance situations, a steep embankment to a canal would make such approach different from, and more dangerous than, approaches to other natural or artificial bodies of water.
With the guiding principles of the body of water cases in mind, neither the appellant's allegation that one side of the canal was gently sloped while the other was not, nor the allegation that the area is dark at night and the canal scarcely visible, transform this ordinary body of water into a trap or hidden danger. Accordingly, the summary judgment on review is AFFIRMED.
GUNTHER and SHAHOOD, JJ., concur.
NOTES
[1] Appellant's amended initial brief, pages 16-17.