29 So.3d 441 (2010)
Sherley FRANCIS, as Personal Representative of the Estate of Kodijah Tulloch, Deceased, Appellant,
v.
SCHOOL BOARD OF PALM BEACH COUNTY, Appellee.
No. 4D08-3953.
District Court of Appeal of Florida, Fourth District.
March 10, 2010.
*442 John R. Whittles of Richman Greer, P.A., West Palm Beach, for appellant.
Randall D. Burks and Gerald A. Williams, West Palm Beach, for appellee.
DAMOORGIAN, J.
Sherley Francis, as Personal Representative of the Estate of Kodijah Tulloch, brought suit against the School Board of Palm Beach County (the school board) seeking damages for the death of her daughter, who was struck and killed by an automobile while walking to her school bus stop. The school board filed a motion to dismiss arguing that it was sovereignly immune from suit because the placement of a school bus stop is a planning-level function. The school board also argued that its actions were not the proximate cause of Kodijah's death. The trial court granted the motion to dismiss and entered a final order dismissing the second amended complaint with prejudice. Francis appeals the final order of dismissal. We affirm.
A trial court's ruling on a motion to dismiss for failure to state a cause of action is reviewed de novo. Delia Ratta v. Delia Ratta, 927 So.2d 1055, 1058 (Fla. 4th DCA 2006). As with the trial court, our review of the complaint is limited to the *443 four corners of the complaint and we must accept the facts alleged in the complaint as true. See Goodall v. Whispering Woods Ctr., L.L.C., 990 So.2d 695, 697 (Fla. 4th DCA 2008). Moreover, all reasonable inferences are drawn in favor of the pleader. Id.
Turning to the complaint, the following factual allegations serve as the basis for the negligence claims against the school board. Kodijah was enrolled at John F. Kennedy Middle School and was assigned to the bus stop located on the west side of the roadway at the intersection of Caribbean Boulevard and Haverhill Road. Because of problems her children were having on the school bus, Francis met with a guidance counselor or other employee of the school board. The school employee instructed Francis that Kodijah should cross Haverhill Road to use the bus stop on the east side of the roadway. Sometime after changing bus stops, Kodijah was struck by a vehicle while crossing Haverhill Road to reach the east side bus stop. She died as a result of her injuries.
Francis argues that the school board's negligent failure to control the students on Kodijah's original school bus, negligent instruction that Kodijah cross the road to another bus stop, and negligent failure to warn Kodijah of the dangers of crossing the road were operational-level actions which are not protected by sovereign immunity. She further alleges that the school board was aware of hazardous conditions at or near Kodijah's newly-designated bus stop and failed to take any precautions to warn parents, students, and other motorists. She asserts that these allegations constitute a prima facie case for negligence for which the school board was not entitled to sovereign immunity.
The school board makes three arguments in response. First, it argues that it did not owe a duty of care to Kodijah while she was en route to her bus stop; second, the school board's acts were not the proximate cause of Kodijah's death; and third, the school board was sovereignly immune from suit because its acts were planning-level decisions.[1]
When addressing the issue of governmental liability under Florida law, the duty analysis is distinct from the later inquiry regarding whether the governmental entity is sovereignly immune from suit. Wallace v. Dean, 3 So.3d 1035, 1044 (Fla. 2009). "If no duty of care is owed with respect to alleged negligent conduct, then there is no governmental liability, and the question of whether the sovereign should be immune from suit need not be reached.... However, if a duty of care is owed, it must then be determined whether sovereign immunity bars an action for an alleged breach of that duty." Pollock v. Fla. Dep't of Highway Patrol, 882 So.2d 928, 932-33 (Fla.2004) (citations omitted).
The first allegation of a duty in Francis's complaint is that the school board owed the general public a duty to exercise due care in carrying out all of its operations. This broad allegation does not support a negligence claim because, in a government tort suit, the plaintiff must prove that the defendant breached a common *444 law or statutory duty "owed to the plaintiff individually and not a tort duty owed to the public generally." See Holodak v. Lockwood, 726 So.2d 815, 816 (Fla. 4th DCA 1999).
The second set of allegations in Francis's complaint concern the school board's negligent failure to warn Kodijah of the dangers at the bus stop and to take other precautions to make the bus stop safer. She asserts that the school board had a duty to provide lights, warnings, or some other indicia that the location was being used as a school bus stop, and to warn her and her children of the dangerous conditions at the bus stop. She also alleges that the school board had notice that the bus stop was dangerous because of reports from various citizens groups and organizations.
A governmental entity that creates a known, dangerous condition which might not be readily apparent, and has knowledge of the presence of people likely to be injured, has a duty to avert the danger or properly warn those who might be injured. Harrison v. Escambia County Sch. Bd., 434 So.2d 316, 320 (Fla.1983) (citing Dep't of Transp. v. Neilson, 419 So.2d 1071, 1078 (Fla.1982)); see also Duval County Sch. Bd. v. Dutko, 483 So.2d 492, 495 (Fla. 1st DCA 1986) (holding that the school board had a duty to warn students of the dangerous conditions at their bus stop because the conditions were created by the school board and were not readily apparent). However, the duty to warn is limited and arises only where the dangerous condition is "so serious and so inconspicuous ... that it virtually constitutes a trap." Dep't of Transp. v. Konney, 587 So.2d 1292, 1299 (Fla.1991) (Kogan, J., concurring); see also Kaweblum ex rel. Kaweblum v. Thornhill Estates Homeowners Ass'n, 801 So.2d 1015, 1017 (Fla. 4th DCA 2001).
The school board did not have a duty to warn Kodijah because it did not create the busy roadway that constituted the danger. Moreover, a busy roadway is not so inconspicuous that it virtually constitutes a trap. On the contrary, the danger of a busy roadway should be apparent.
The third set of allegations in Francis's complaint concern the steps the school board took to deal with the altercations on Kodijah's school bus. Francis argues that the school board acted negligently in training Kodijah's bus driver to deal with discipline problems on the bus, and in directing Kodijah to cross Haverhill Road to another bus stop.
District school boards are required to provide transportation for public school students when such transportation is "necessary to provide adequate educational facilities and opportunities which otherwise would not be available and to transport students whose homes are more than a reasonable walking distance ... from the nearest appropriate school." § 1006.21(3)(a), Fla. Stat. (2008). The school board must employ maximum regard for the safety of its students when routing buses, appointing bus drivers, and providing operating equipment. § 1006.22, Fla. Stat. (2008).
The tragic accident in this case, however, did not occur while Kodijah was riding her school bus or waiting at her bus stop. It occurred while she was walking to her bus stop. Students are under the school board's control during the time they are being transported to or from school at public expense. § 1003.31(1)(a), Fla. Stat. (2008). The school board does not have custody or control over students while they are en route to their bus stops; that control rests solely with the students' parents or guardians. Thus, the school board does not have any duty to its students during this period of time. See Pratt v. Robinson, *445 39 N.Y.2d 554, 560, 384 N.Y.S.2d 749, 349 N.E.2d 849 (N.Y.1976) (noting that a school board's duty to its students stems from its physical custody over them, and is limited to the time in which the board has control over the students).
In Harrison v. Escambia County School Board, our supreme court stated the following:
School boards, however, are not insurers of students' safety, and a school board's control over its students regarding transportation extends from when a school bus picks up a student at a bus stop to the school door. When a student is injured before reaching a designated bus stop, or after leaving one, that student is outside the board's duty of care because the board's duty stems from the fact of the school board's physical custody of its students.
434 So.2d at 319 (citations omitted). This limitation has been codified in Florida Administrative Code Rule 6A-3.0121(2)(c)1 (2008), which states that parents must "ensure the safe travel of their students during the portions of each trip to and from school and home when the students are not under the custody and control of the school district, including during each trip to and from home and the assigned bus stop...."
Accordingly, the crux of the issue is that Kodijah was not under the school board's control when the accident occurred. Regardless of the circumstances that led to her using the alternate bus stop, she was under the exclusive control of her parents or guardians during the time she was walking to the bus stop. The school board did not have a duty to ensure Kodijah's safety in arriving at her bus stop. For this reason, we affirm the trial court's order dismissing Francis's complaint with prejudice.
We need not reach the question of whether the school board was sovereignly immune from suit because, without a duty, there can be no action in negligence.
RODRIGUEZ-POWELL, MILY, Associate Judge, concurs.
HAZOURI, J., concurs specially with opinion.
HAZOURI, J., concurring specially.
The Florida Supreme Court's decision in Harrison v. Escambia County School Board, 434 So.2d 316 (Fla.1983), compels me to concur with the majority. Harrison essentially eliminates a school board's liability for any operational decisionno matter how unreasonable or carelessso long as a student has not boarded the school bus. This appears contrary to the school board's statutory obligation.
As noted by the majority:
District school boards are required to provide transportation for public school students when such transportation is "necessary to provide adequate educational facilities and opportunities which otherwise would not be available and to transport students whose homes are more than a reasonable walking distance... from the nearest appropriate school." § 1006.21(3)(a), Fla. Stat. (2008). The school board must employ maximum regard for the safety of its students when routing buses, appointing bus drivers, and providing operating equipment. § 1006.22, Fla. Stat. (2008).
(emphasis added).
The routing of school buses certainly includes the location of stops. Where a school board chooses to designate a bus stop can have serious consequences for students who are walking to that stop, which is exactly what happened here. As alleged in the complaint, Haverhill Road is a busy roadway that exposes children to *446 serious harm when they have to cross it to get to a bus stop. At the time of her death, Kodijah was eleven years old. The bus stop originally designated for Kodijah did not require her to cross Haverhill Road. The school board, instead of taking measures to assure that other students did not harass Kodijah at her original bus stop, chose to direct her to cross a busy roadway to a different bus stop. This action on the part of the school board hardly constitutes employing maximum regard for the safety of its students when routing buses. Nonetheless, Harrison requires affirmance.
NOTES
[1] We note that the school board did not specifically make the duty argument at the trial court level. Nevertheless, this Court may consider that argument as a basis to affirm the trial court's order dismissing the complaint. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644-45 (Fla. 1999) (an appellate court may affirm a decision from the trial court that reaches the right result for the wrong reason as long as "there is any basis which would support the judgment in the record."). At the hearing on the motion to dismiss, the trial court considered the duty aspect of governmental liability, although it did not clearly separate that analysis from the analysis of sovereign immunity.