# Third District Court of Appeal

## State of Florida

Opinion filed November 09, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-13
Lower Tribunal No. 13-6081
_____

**Londan Davis,**
Appellant,

vs.

**Neftali Baez,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Brill Rinaldi Garcia and David W. Brill (Weston); Joel S. Perwin, for appellant.

Walter J. Harvey and John-Philip M. Iafelice; Haliczer Pettis & Schwamm and Debra P. Klauber and Eugene K. Pettis (Fort Lauderdale), for appellee.

Before SALTER, EMAS and FERNANDEZ, JJ.

EMAS, J.

**INTRODUCTION**

Londan Davis, the plaintiff below, appeals from the trial court's entry of final summary judgment in favor of Neftali Baez, the defendant below and an employee of the Miami-Dade County School Board. The trial court determined that sovereign immunity barred Davis' claim against Baez for individual negligence, as pleaded in Count II of the operative complaint. We reverse, and hold that the trial court erred in entering summary judgment on Davis' individual negligence claim, as there remain disputed issues of material fact as to whether Baez acted in a manner that would place him beyond the protection of sovereign immunity and render him individually liable to Davis.

**FACTS**

At all relevant times, Londan Davis was an eighteen-year-old student at Sunset Senior High School in Miami-Dade County. She was struck by a car while crossing from the west side of the street to reach the school bus stop on the east side of the street. At the time of the accident (5:50 a.m.) it was dark outside, and the bus had not yet arrived at the bus stop on the east side of the street. Davis suffered serious injuries and she sued, among others, the Miami-Dade County School Board and Neftali Baez, a school bus driver employed by the School Board.

2

In her operative complaint, Davis alleged, inter alia, that Baez and the School Board were negligent for failing to instruct Davis and her brother[1] to wait on the west side of the street (the street being Northeast 18th Avenue) until the bus arrived at the designated bus stop, halted traffic, activated its red flashing lights and extended its "STOP" arm, thereby allowing Davis and her brother to safely cross from the west side of the street to east side of the street. The issue on appeal involves only Count II of the complaint, which sets forth a claim of individual negligence against Davis only. Count II alleged, in pertinent part, that:

● Baez, the school bus driver, "on his own initiative, took it upon himself to advise the Davis children that he was going to be picking them up. . . on the east side of the road way, necessitating Plaintiff. . . to cross NE 18th Avenue."

● Baez failed to instruct Plaintiff and her brother to wait on the west side of the street for the bus to arrive and to cross only after the bus arrived, stopped, and activated its red flashing lights and extended its stop arm.

● Baez required Davis and her brother to cross the street before the bus arrived, even though Baez knew or should have known that it would be dangerous for Davis to do so.

In his discovery deposition, Baez acknowledged that he affirmatively told Davis and her brother that they could not wait on the west side of the street; that he told them they were required to cross the street and be waiting on the east side of

---

[1] Londan Davis' sixteen-year-old brother had already crossed to the east side of the street at the time his sister was struck and injured. Ms. Davis' brother is not a party to the action.

3

the street before the bus arrived; and that if Davis and her brother were not already waiting on the east side of the street when the bus arrived, Baez would not wait for them to cross and would not pick them up.

Ms. Kathryn Beasley is the Bus Route Manager for Miami-Dade County Public Schools, and is in charge of establishing and reviewing bus stops, bus routes, and overseeing bus drivers. She testified in deposition that the Davis children were not only permitted to wait on the west side of the street until the bus arrived, but that the proper procedure is that the Davis children are supposed to wait on the west side of the street until the bus arrived. Only after the bus arrived and stopped, with its red lights flashing and its STOP arm extended, should the Davis children cross to the east side of the street. Ms. Beasley testified that Baez's instructions to Davis and her brother was contrary to School Board policy and contrary to bus driver training.

Ms. Theodosia Davis is a Field Operations Specialist for Miami-Dade County Public Schools, and is a first-level supervisor for bus drivers and for receiving and resolving complaints from parents and school personnel. Ms. Davis agreed with Ms. Beasley that students are permitted to wait on the other side of the street for the bus to arrive and should cross the street to get to the bus stop only after the bus has arrived and activated its lights and STOP arm to permit safe crossing. Ms. Davis testified that she would not tell a student (as Baez did) that

4

they are required to cross the street and be waiting at the stop before the bus arrives; that there is no reason to tell a student this; and that if she became aware of such a practice, she would take the necessary steps to correct it. Ms. Davis testified she could not think of any action that would be more dangerous to the students than telling them that they were required to cross the street before the bus arrived.

During her deposition, Ms. Davis was shown a copy of the Miami-Dade County Public Schools' "Handbook for School Bus Drivers, Aides and Operations Staff" and affirmed that this Handbook provided in part: "Students must cross the road only in front of the bus when traffic has been halted by means of the flashing red lights and stop arm extended." She indicated that this procedure should be followed when students are waiting on one side of the street and the bus arrives on the opposite side of the street.

Another bus driver, Ms. Monica Smith, testified that the students are not supposed to cross the street until the bus arrives and turns on its lights and extends the STOP arm. Ms. Smith testified that she has never instructed students to cross the street before the bus arrives at the stop.

### The Prior Appeal of the Order Dismissing the School Board

The School Board moved to dismiss the counts against it and Baez, asserting that both were sovereignly immune from tort liability and that the complaint failed to state a cause of action against the School Board because the School Board did not owe a duty of care to Davis at the time of the injury, nor a duty to warn her of the roadway's dangerousness. The trial court granted the motion to dismiss, but only as to the School Board, and only on the issue of duty. All claims against the School Board (both direct and vicarious) were dismissed with prejudice and Davis appealed that decision to this court. Davis v. City of Homestead, 154 So. 3d 443 (Fla. 3d DCA 2014) (Davis I). The only issue on appeal in Davis I was whether the trial court erred in ruling that the School Board owed no duty to Davis. This court affirmed the trial court's decision per curiam, citing to Francis v. School Board of Palm Beach County, 29 So. 3d 441 (Fla. 4th DCA 2010).[2]

Baez answered Davis' complaint below, asserting several affirmative defenses, including sovereign immunity pursuant to section 768.28(9)(a), Florida Statutes. Thereafter, Baez moved for summary judgment, arguing he was entitled to summary judgment because the appellate court in Davis I had affirmed the trial court's determination that the School Board, and by extension, Baez, owed no duty to Davis, and also argued that he was immune from liability under the sovereign

---

[2] Appellant concedes that, as a result of our affirmance in Davis I, no cause of action remains against the School Board, and the only remaining cause of action she can pursue is Count II of the operative complaint, alleging individual negligence by Baez.

immunity statute because (1) the location of the bus stop was a planning-level decision of the School Board; (2) Baez did not "undertake" a duty to Davis while she was within Baez's physical custody or control; and (3) Baez was acting in the course and scope of his employment and Davis cannot show bad faith, malicious purpose, or willful and wanton disregard.

After a hearing, the trial court granted Baez's motion for summary judgment on both the duty and the sovereign immunity issues, and entered judgment. This appeal followed, and we review de novo the trial court's granting of summary judgment. See Volusia Cnty v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126 (Fla. 2000). In doing so, we must view the record and reasonable inferences therefrom in a light most favorable to the nonmoving party, and any doubt concerning the existence of a disputed issue of material fact must be resolved against the moving party. Turner v. PCR, Inc., 754 So. 2d 683 (Fla. 2000); Colon v. Outback Steakhouse of Fla., Inc., 721 So. 2d 769 (Fla. 3d DCA 1998).

**Law of the case**

The trial court determined that Davis could not proceed on Count II alleging individual negligence against Baez, under the apparent belief that such a conclusion was compelled by our decision in Davis I. Baez urges us to affirm this determination, contending that our decision in Davis I constitutes law of the case and forecloses Davis' negligence action against Baez individually. While Davis I

7

is indeed law of the case, we do not agree that our decision in that prior appeal forecloses the individual negligence claim against Baez, which is premised upon allegations that Baez acted outside the scope of his employment or acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of the safety of Davis. These allegations, if proven, would constitute an exception to the sovereign immunity afforded to employees and agents of the School Board, permitting personal liability against Baez.

Davis I did not involve the question of sovereign immunity; instead the trial court's order (affirmed by us) was based solely on a finding that the School Board owed no duty to Davis. The reason no duty was owed is that, as the Fourth District held in Francis, 29 So. 3d at 444, the "school board does not have custody or control over students while they are en route to their bus stops" and thus "the school board does not have any duty to its students during this time."[3] Because Davis was not on the bus or within the custody or control of the School Board (or

_____

[3] See also Harrison v. Escambia Cnty. School Bd., 434 So. 2d 316, 319 (Fla. 1983) (holding "[a]s a general rule, if a public school entity provided transportation for its pupils, it owes a duty of care with regard to that transportation. School boards, however, are not insurers of students' safety, . . . and a school board's control over its students regarding transportation extends from when a school bus picks up a student at a bus stop to the school door. When a student is injured before reaching a designated bus stop, or after leaving one, that student is outside the board's duty of care because the board's duty stems from the fact of the school board's physical custody of its students" ) (internal citations omitted).

8

its employees) at the time of the accident, there was no duty of care owed by the School Board to Davis.

Therefore, while our affirmance of that order did determine that the School Board (and by extension, Baez) owed no duty to Davis based upon the fact that she was not on the bus or otherwise within the physical custody or control of the School Board at the time of the accident, our affirmance did not address or determine whether Baez could be held individually liable if, as alleged in Count II of the complaint, he voluntarily undertook to act, thereby creating a separate duty owed to Davis.  Further, and as alleged in Count II,  such individual liability could be imposed upon Baez only if, in undertaking to act, Baez did so in a manner that would place him beyond the protection of sovereign immunity and render him personally liable under section 768.28(9)(a).  Upon our review of the record, we determine that genuine issues of material fact remain in dispute on this question, thereby precluding summary judgment on Count II of the complaint.

**Sovereign Immunity and Personal Liability**

We begin with the sovereign immunity statute, section 768.28(9)(a), which provides in relevant part:

> (9)(a) No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting

9

wanton and willful disregard of human rights, safety, or property. . . . The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard. <u>The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.</u> (Emphasis added).

As can be seen, sovereign immunity is conferred upon Baez, as a School Board employee, so long as he acted in the scope of his employment and did not act in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Reading this provision in conjunction with the allegations of the complaint and the record evidence in opposition to Baez's motion for summary judgment, it is clear that there remain disputed issues of material fact that must be resolved by the trier of fact. There is record evidence that:

• Baez did not merely fail to instruct Davis and her brother to wait on the west side of the street for the bus to arrive and to cross only after the bus arrived, stopped, and activated its red flashing lights and extended its stop arm. Instead, Baez, on his own initiative, told Davis that she and her brother were <u>required</u> to cross the street and be waiting for the bus when it arrived at the bus stop, and that if they were not already there and waiting when the bus arrived, he would not wait for them to cross the street;

10

• This "requirement" by Baez was contrary to express School Board policy and bus driver training, by which Davis and her brother should have waited on the west side of the street until the bus arrived and stopped, with its red lights flashing and its stop arm extended, to permit safe crossing of the street by Davis and her brother;

• The Field Operations Specialist for Miami-Dade County Public Schools acknowledged that Baez should not have advised Davis and her brother of this "requirement," that there is no reason to tell a student this; and that if she had been aware of Baez's action, she would take the necessary steps to correct it. The Field Operations Specialist could not think of any action that would be more dangerous to the students than telling them that they were required to cross the street before the bus arrived.

Thus, while it may be true that ordinarily the School Board (and by extension, Baez) would not owe a duty to Davis before she was actually on the bus (see Davis I, affirming with citation to Francis 154 So. 3d at 443), there remains the question whether, by voluntarily undertaking to act, in requiring Davis and her brother to cross the street before the bus arrived, Baez created a foreseeable zone of risk for Davis, and thereby owed a duty to Davis.

**The Undertaker Doctrine**

The most recent decision of the Florida Supreme Court addressing the nature and scope of the undertaker doctrine is Wallace v. Dean, 3 So. 3d 1035 (Fla. 2009). In Wallace, a wrongful death action was filed by the mother of Brenda Wallace against the Marion County Sheriff's Office. The complaint alleged[4] that the mother had attempted several times to call Brenda at home, but there was no

---

[4] The facts as alleged in the complaint are taken from the district court opinion. See Wallace v. Dean, 970 So. 2d 864, 865-66 (Fla. 5th DCA 2007).

11

answer. The mother called a neighbor to check on Brenda. The neighbor went to the house and knocked on the doors and windows, but there was no response. The neighbor then called 911. Two deputies responded to the 911 call. One of the deputies entered the home through an unlocked window, and then opened the door for the other deputy, the neighbor, and the neighbor's father to enter the home. The deputies found Brenda Wallace inside the home, breathing but otherwise unresponsive, even when one of the deputies attempted to awaken her by calling her name loudly and shaking one of her legs. The neighbor and the neighbor's father suggested to the deputies that Ms. Wallace was in a diabetic coma and that the deputies should call an ambulance, but the deputies declined to call an ambulance or summon any medical assistance. Instead, the deputies suggested that the neighbor leave the door unlocked and return to check on her later. The next morning, the neighbor found Brenda Wallace unresponsive and again called 911. Emergency medical personnel responded to the call and transported Ms. Wallace to the hospital, where she died several days later without ever regaining consciousness.

The complaint alleged that the deputies' actions in undertaking a safety check, engaging with Ms. Wallace, and thereafter failing to take any additional action (e.g., calling an ambulance) placed Ms. Wallace in a zone of risk, either by

12

increasing the risk of harm to Ms. Wallace or inducing third parties (who otherwise would have rendered aid) to forebear from doing so.

The trial court dismissed the complaint on the grounds that the deputies and the Sheriff's Office did not owe a common-law duty of care to Ms. Wallace, and that by responding to the 911 call and conducting a safety check, the deputies were performing a discretionary function for which the Sheriff's Office (and the deputies) were sovereignly immune. The Fifth District affirmed the trial court's dismissal of the complaint.

The Florida Supreme Court quashed the district court decision, holding that under the facts as alleged in the complaint, the deputies owed Ms. Wallace a duty of care pursuant to the undertaker doctrine. The Wallace court observed, 3 So. 3d at 1050:

> This Court has long adhered to the common-law doctrine that
>
>> [i]n every situation where a man *undertakes to act*, or to pursue a particular course, he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured by any force which he sets in operation, *or by any agent for which he is responsible. If he fails* to exercise the degree of caution which the law requires in a particular situation, *he is held liable for any damage that results to another*, just as if he had bound himself by an obligatory promise to exercise the required degree of care.... [E]ven "where a man interferes *gratuitously*, he is *bound to act in a reasonable and prudent manner according to the circumstances and opportunities of the case*."

Banfield v. Addington, 104 Fla. 661, 140 So. 893, 896 (1932) (citations omitted) (emphasis supplied) (citing 1 Thomas A. Street, *Foundations of Legal Liability* 92 (1906)) (quoting Flint & Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N.E. 503, 506 (1906)).

The Wallace court reaffirmed the continued vitality of this well-entrenched principle quoting from its previous decision in Union Park Memorial Chapel v. Hutt, 670 So. 2d 64, 66-67 (Fla. 1996):

Voluntarily undertaking to do an act that if not accomplished with due care might increase the risk of harm to others or might result in harm to others due to their reliance upon the undertaking confers a duty of reasonable care, because it thereby "creates a foreseeable zone of risk."

Wallace, 3 So. 3d at 1050.

In the instant case, Baez told Davis that she could not wait on the west side of the street and cross to the east side of the street after the bus arrived. Instead, Baez told Davis that she was required to cross the street and be waiting at the bus stop when the bus arrived, and that if she and her brother were not on the east side when the bus arrived, he would not pick him up. By undertaking to act in this way, Baez increased the risk of harm to Davis, and by following Baez's "required" procedure, Davis and her brother would be crossing the street without the safety provided by the presence of a bus with its flashing lights and its STOP arm extended. Baez's "required" procedure was contrary to School Board policy, contrary to bus driver training, and even the School Board's Field Operations

14

Specialist stated she could not think of any action that would be more dangerous to the students than telling them that they were required to cross the street before the bus arrived.

We hold that the allegations and the evidence support the application of the undertaker doctrine and the conclusion that, by voluntarily undertaking to act and affirmatively telling Davis she was required to cross the street and be waiting at the bus stop when the bus arrived, Baez created a foreseeable zone of risk to Davis and was under a duty to act with reasonable care under the circumstances.

Our conclusion comes with this proviso: As a result of our holding in Davis I, it has been determined that the School Board (and by extension, Baez) did not generally owe a common-law duty to Davis, because she was not on the bus or otherwise within the physical custody or control of the School Board at the time of the accident. Thus, the only count remaining in the instant case is a single count for the individual negligence of Baez. So, although the general facts of this case permit application of the undertaker doctrine, individual negligence as to Baez can be established only if, as alleged in Count II and as required by section 768.28(9)(a), Davis can prove that Baez's actions were outside the course and scope of his employment or were committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

15

## **CONCLUSION**

The allegations of Count II, together with the depositions and other record evidence presented in opposition to Baez's motion for summary judgment, establish that there remain material facts in dispute regarding Davis' claim for individual negligence against Baez. Our decision in <u>Davis I</u> established, as law of the case, that the School Board cannot be held liable, either directly or vicariously, based upon the absence of a duty owed by the School Board to Davis. However, Davis is not foreclosed from pursuing Count II of the complaint, which alleged individual liability against Baez for negligence, based upon the undertaker doctrine. By undertaking to act (i.e., by advising Davis and her brother that they were required to cross the street before the bus arrived at the bus stop), Baez was under a duty to act with reasonable care. Baez could be found personally liable if Davis can establish that Baez breached that duty and that, in doing so, Baez acted outside the scope of his employment or acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Reversed and remanded.

16