SHAW, Justice.
We have before us the following question of great public importance:
Does section 373.443, Florida Statutes (1989), immunize a water management district from negligence in the execution of its operational level activities or are such activities and subsequent liability governed by the relevant provisions of section 768.-28, Florida Statutes (1989)?
Nanz v. Southwest Florida Water Management Dist., 617 So.2d 735 (Fla. 2d DCA 1993) (order on motion for certification). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Because the present case is controlled by the 1987, not the 1989, version of Florida Statutes, and is limited to the issue of liability for stormwater management, we rephrase the question as follows:
Does section 373.443, Florida Statutes (1987), immunize a water management district from liability for damages arising from the failure of a stormwater management system?
We answer in the negative and approve the result in Nanz v. Southwest Florida Water Management District, 617 So.2d 735 (Fla. 2d DCA 1993).
Nanz sued Southwest Florida Water Management District (the District) based on the District’s alleged failure in managing storm-water drainage following rainfalls in the autumn of 1988:
11. At all times material Defendants were operating in the County of Hillsbor-ough and assumed possession and control of the waters within the boundaries of Hillsborough County and beyond, and had undertaken to install and maintain a complete water drainage system for the inhabitants of Hillsborough County, including those Plaintiffs named.
12. In particular, Defendants undertook the installation, operation, control, and maintenance of a drainage system servicing the Pemberton Creek Subdivision wherein Plaintiffs reside and/or own real property.
Generally speaking, said drainage system maintained, operated, and controlled by Defendants consists of the following: Pemberton Creek which flows from Plant City into Baker Creek. Baker Creek then flows into Lake Thonotosassa. Lake Tho-notosassa then out-falls through a drainage structure controlled by Defendants into Flint Creek. Flint Creek flows into the Hillsborough River.
*1086 13. Having assumed control of this drainage system and undertaken to operate and maintain said drainage system, Defendants, and each of them, had a duty and obligation to prudently operate, control, maintain, and manage said system so that it would work properly and drain off excess waters so as not to cause flooding in the area. Defendants owed said duties and obligations tó your Plaintiffs, residents and/or owners of homes and real property serviced by the drainage system.
14. The Defendants owed the Plaintiffs a duty of care to provide, operate, control, and/or maintain a proper system of drainage for the Plaintiffs and all others residing in Hillsborough County.
15. The Defendants’ duty of care was breached through the negligent and/or wrongful acts and/or omissions of the Defendants including, but not limited to, the following:
A. Prior to, during, and following rainfalls occurring September 7, 1988, through September 13, 1988, the Defendants refused and failed to properly maintain, operate, and open flood gates and/or “locks” located on Lake Thonotosassa and leading from Lake Thonotosassa to Flint Creek so as to keep excess water from overflowing the lake and back flowing onto Plaintiffs’ property.
B. Prior to, during, and following rainfalls occurring September 7, 1988, through September 13, 1988, the Defendants negligently failed to properly regulate the flow of water in the creeks, rivers, canals, and lakes surrounding and/or near Plaintiffs’ real property, causing flooding to Claimants’ property. Stated oversimply, Defendants, by their operational activities, effectively blocked the natural flow of water unnecessarily, causing the water, which normally flows in a northerly direction, to “stop up” and then “back flow” in a southerly direction, flooding Plaintiffs’ property.
C. Prior to, during, and following rainfalls occurring September 7, 1988, through September 13, 1988, Defendants, and each of them, failed to properly dredge, clean, and otherwise operate, control, and/or maintain the drainage system made up of the Pemberton Creek, Baker Creek, and the surrounding areas.
[[Image here]]
16. A private person in like circumstances would be liable to the Plaintiffs under state law.
17. As a direct and proximate result of Defendants’ breach of their duties owed to Plaintiffs, Plaintiffs suffered substantial damages in that their homes and/or parcels of real property were flooded, leading to substantial damage to both real property and personal property owned by the Plaintiffs. Additionally, Plaintiffs have suffered fear, anxiety, and mental distress as a direct result of Defendants’ breach and the subsequent flooding of Plaintiffs’ property.
The complaint alleged that the District did not enjoy sovereign immunity for its negligence in managing the stormwater runoff.
The District sought to dismiss the complaint, arguing that section 373.443, Florida Statutes (1989), grants the District absolute immunity for liability arising from the failure of a storm management system. The trial court found the District immune from liability under section 373.443 and dismissed the complaint with prejudice. The district court reversed, ruling that section 373.443, Florida Statutes (1989), confers immunity only for planning-level activities, and that the general waiver of immunity contained in section 768.28 for operational-level activities is applicable to the actions alleged in the complaint. The District sought review and asserts that section 373.443 confers specific immunity on the District for the acts alleged in the complaint.
Chapter 373 establishes a management system for Florida’s waters and provides immunity from liability for the State in particular areas. The 1987 version of the statute did not provide specific immunity from liability arising from stormwater'management:
373.443 Immunity from liability. — No action shall be brought against the state or district, or any agents or employees of the state or district, for the recovery of damages caused by the partial or total failure of any dam, impoundment, reservoir, appurtenant work, or works upon the ground *1087 that the state or district is liable by virtue of any of the following:
[[Image here]]
(3) Control or regulation of dams, im-poundments, reservoirs, appurtenant work, or works regulated under this chapter.
§ 373.443, Fla.Stat. (1987).
The legislature amended the statute in 1989 to provide immunity for stormwater management:
373.443 Immunity from liability. — No action shall be brought against the state or district, or any agents or employees of the state- or district, for the recovery of damages caused by the partial or total failure of any stormwater management system, dam, impoundment, reservoir, appurtenant work, or works upon the ground that the state or district is liable by virtue of any of the following:
[[Image here]]
(3) Control or regulation of stormwater management systems, dams, impound-ments, reservoirs, appurtenant work, or works regulated under this chapter.
§ 373.443, Fla.Stat. (1989) (emphasis added). Further, the definitions in chapter 373 were amended to include an explicit definition for “stormwater management system”:
373.403 Definitions. — When appearing in this part or in any rule, regulation, or order adopted pursuant thereto, the following terms mean:
[[Image here]]
(10) “Stormwater management system” means a system which is designed and constructed or implemented to control discharges which are necessitated by rainfall events, incorporating methods to collect, convey, store, absorb, inhibit, treat, use, or reuse water to prevent or reduce flooding, overdrainage, environmental degradation, and water pollution or otherwise affect the quantity and quality of discharges from the system.
§ 373.403, Fla.Stat, (1989).
The damages specified in Nanz’s complaint allegedly arose as a result of a failure in the District’s stormwater management operations following rainfall events occurring between September 7 and 13,1988. Because the alleged failure of the stormwater management system took place before section 373.443 was amended in 1989, the 1987 version of the statute, which does not embrace immunity for stormwater management activities, controls. The District thus does not enjoy specific immunity under this statute for the alleged failures. We must now determine whether the State nevertheless enjoys general immunity for the alleged acts.
The State through chapter 768 established a broad-based waiver of state immunity from liability:
768.28 Waiver of sovereign immunity in tort actions....
(1) In accordance with s. 13, Art. X, State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or' its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be hable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.
§ 768.28(1), Fla.Stat. (1987). This Court has interpreted this section as establishing a waiver of sovereign immunity for operational-level activities. Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla.1979).
The present complaint alleges that the District breached its duty of care by “fail[ing] to properly maintain, operate, and open flood gates and or locks,” by “failing] to properly regúlate the flow of water in the creeks, rivers, canals, and lakes surrounding and/or near Plaintiffs’ real property,” and by “fail[ing] to properly dredge, clean, and otherwise operate, control, and/or maintain the *1088 drainage system.” The complaint summarizes: “Defendants, by their operational activities, effectively blocked the natural flow of water unnecessarily, causing the water ... to stop up and then back flow in a southerly direction, flooding Plaintiff’s property.” The complaint thus states a claim of operational-level negligence that is embraced within the section 768.28 waiver. The District is potentially liable for the alleged acts, and the trial court erred in dismissing the complaint.
We approve the result reached by the district court in Nanz v. Southwest Florida Water Management District, 617 So.2d 735 (Fla. 2d DCA 1993), but not the rationale. We remand for proceedings consistent with this opinion.
It is so ordered.
KOGAN, HARDING and WELLS, JJ., concur.
GRIMES, C.J., concurs with an opinion, in which OVERTON, J., and McDONALD, Senior Justice, concur.
OVERTON, J., and McDONALD, Senior Justice, concur in result only.