MAKAR, J.
A state college’s stormwater management system is the focus of this dispute. Charles and Virginia Barnes sued the District Board of Trustees of St. Johns River State College for damages to their property from water alleged to have overflown from a retention pond on the District’s campus. The trial court ruled the District was entitled to immunity under section 373.443, Florida Statutes. We affirm.
I.
The Barneses’ lakefront- home, constructed in 2000, is on Cedar Road, Orange Park, Florida. Nearby at a significantly higher elevation is St. Johns River Community College, owned and operated by the District, a legislatively-created entity. The College’s campus has seven retention ponds, each a part of the District’s stormwater management system, which is permitted by and under the regulatory oversight of the St. Johns River Water Management District. In the past and to the present, surface water naturally flows from the District’s uplands property to *104 ward the navigable water body known as Doctors Lake, on which the Barneses’ property is located, and then eventually into the St. Johns River.
On August 14, 2009, an exceptionally heavy seasonal rainfall caused a retention pond in a neighboring subdivision to overflow into one of the District’s retention ponds, Pond F, causing one of its retaining walls to breach, sending overflow waters downhill towards Doctors Lake, through wetlands into a drainage pipe that goes under railroad tracks parallel to Cedar Road, and ultimately onto and through the Barneses’ property. Since that time, the College has modified Pond F, increasing its capacity to accommodate a 100-year storm event versus the lesser storm threshold previously in place.
In November 2011, the Barneses sued the College and the subdivision’s homeowners association (which is not a part of this appeal), its initial claim one of negligence against the District for failing to design, “adapt,” and “operate in a responsible way” its stormwater management system. An inverse condemnation claim was added, but was ultimately resolved against the Barneses, who have not contested that ruling on appeal, focusing exclusively on their negligence claim.
The District raised various defenses including immunity under (a) article X, section 13, of the Florida Constitution, as implemented via section 768.28, Florida Statutes, and (b) section 373.443, Florida Statutes. After discovery, the District moved for summary judgment on the two claims. The District asserted that the alleged negligent conduct related solely to planning and design level functions of the storm water management system and a failure to modernize the ponds, which it claimed were immune from tort liability under 768.28. Regarding section 373.443, the District argued it was entitled to absolute immunity from liability for damages, which were allegedly caused by the failure of its storm water management system.
The Barneses responded that factual issues existed about the District’s operation of its water management system and that the District was negligent by constructing the least costly design of its water management system thereby creating a known hazard. At the hearing on its motion, the District argued it was entitled to immunity under section 768.28 because its ponds are designed rather than operated; the only thing the District could have done to address the Barneses’ concern was to have redesigned or reconfigured the ponds, which would be discretionary acts immune from liability. It also argued that immunity under section 373.443 applied because the partial failure of the system (i.e., the breach of a retaining wall on Pond F) is the type of incident the statute was intended to shelter from liability. The Barneses countered, however, that the District knew its system had shortcomings; that college personnel toured all the ponds, finding three (but not Pond F) had deviations from the original design or were missing components that controlled water levels; and that flood waters at the College’s performing arts building were pumped into Pond F exacerbating problems for the Barneses’ property. The basis for these assertions was contained in two depositions, one by a District employee charged with facilities management and the other by an engineer with the St. Johns River Water Management District, both filed belatedly in the trial court, but which were relied upon by the trial judge in his rulings.
In its rulings, the trial court noted that the Barneses’ amended complaint raised both a negligent design claim and an operational negligence claim, the latter consisting solely of the conclusory allegation that the District engaged in “operational negli *105 gence in failing to operate [its] water management system in a responsible way[.]” As to immunity under section 768.28, the trial court ruled that the Barneses’ negligence claim was not barred because “[tjhere at least appears to be a disputed issue of material fact on the issue of whether there is operational negligence on the part of the District which caused damage to the plaintiffs,” thereby precluding summary judgment. Turning to the claim of immunity under section 373.443, the trial court held that “[t]here is no dispute that the plaintiffs’ claims herein are founded on the District’s control of a ‘stormwa-ter management system,’ ‘impoundment’ or “work’ regulated by Chapter 373, the partial or total failure of which is alleged to have caused the plaintiffs’ damages.” As such, it held that the “District is immune from liability for the negligence claim asserted by the plaintiffs.” In doing so, the trial court tacitly concluded that section 373.443 extended immunity to the Barneses’ operational level negligence claims, ones that would otherwise be actionable under section 768.28’s waiver of immunity. A partial final judgment was later entered in favor of the District on the negligence claim as well as the inverse condemnation claim (in part because the Barneses had not lost all use of their property). As mentioned previously, the Barneses challenge only the entry of judgment on their negligence claim.
II.
Whether immunity exists in this case hinges on whether section 373.443 provides a broader scope of immunity than that provided by section 768.28 as applied to the District’s stormwater management system. The trial court ruled that section 768.28 does not provide the District with immunity from potential liability for the allegations of operational negligence the Barneses have asserted, a ruling the District does not contest. The specific task is thereby to determine whether the Barnes-es’ operational negligence claims survive the protective umbrella that section 373.443 provides for the stormwater management system at issue.
We turn then to the text of section 373.443, Florida Statutes, which was enacted in 1972 to provide immunity for the partial or total failure of dams and other listed public works, but which was amended in 1989 to include “stormwater management systems” within its scope. The statute, entitled “Immunity from liability,” reads as follows (with 1989 amendments in bold):
No action shall be brought against the state or district, or any agents or employees of the state or district, for the recovery of damages caused by the partial or total failure of any stormwater management system, dam, impoundment, reservoir, appurtenant work, or works upon the ground that the state or district is liable by virtue of any of the following:
(1) Approval of the permit for construction or alteration.
(2) The issuance or enforcement of any order relative to maintenance or operation.
(3) Control or regulation of stormwater management systems, dams, impound-ments, reservoirs, appurtenant'work, or works regulated under this chapter.
(4) Measures taken to protect against failure during emergency.
§ 373.443, Fla. Stat. (2009), amended by ch. 89-279, § 23, Laws of Fla. (1989) (emphasis added). The 1989 Act added the definition of a “stormwater management system,” which has remained unchanged to date:
[A] system which is designed and constructed or implemented to control dis *106 charges which are necessitated by rainfall events, incorporating methods to collect, convey, store, absorb, inhibit, treat, use, or reuse water to prevent or reduce flooding, overdrainage, environmental degradation, and water pollution or otherwise affect the quantity and quality of discharges from the system.
§ 373.403(10), Fla. Stat. (added by ch. 89-279, § 11, Laws of Florida (1989)). As of 1989, the statute facially provides immunity to the state or a district (or its agents) for partial/total failures of the defined systems/works “by virtue of .any of’ the four statutorily-defined activities (permit approvals; maintenance/operation orders; control/regulation of systems/works; and emergency measures). Only the third activity — the “[c]ontrol or regulation of stormwater management systems” — is at issue in this appeal.
No court has addressed the post-1989 revisions to the statute as they apply to a stormwater management system. But the Florida Supreme Court in Southwest Florida Water Management District v. Nanz, 642 So.2d 1084 (Fla.1994) discussed the 1987 version of the statute, whose language is identical to today’s version other than its exclusion of “stormwater management systems.” The legal question the supreme court addressed was: “Does section 373.443, Florida Statutes (1987), immunize a water management district from liability for damages arising from the failure of a stormwater management system?” Id. at 1085. Under the 1987 version of the statute, the majority said it did not, holding that the water management district was potentially liable for damages caused by the failure of its stormwater management system arising from the negligent operational-level activities alleged by Nanz. Id. at 1087. In reaching this conclusion, the majority noted that the district did not have “specific immunity” under the 1987 version of the statute, which did not include stormwater management systems at that time. The majority did not consider whether immunity might apply to any “dam, impoundment, reservoir, appurtenant work, or works” the district controlled or regulated as a subpart of its existing stormwater management system. Instead, the majority addressed only whether the district enjoyed “general immunity” under section 768.28, Florida Statutes, for the negligent acts alleged, which are summarized as follows:
The present complaint alleges that the District breached its duty of care by “failing] to properly maintain, operate, and open flood gates and or locks,” by “fail[ing] to properly regulate the flow of water in the creeks, rivers, canals, and lakes surrounding and/or near Plaintiffs’ real property,” and by “failftng] to properly dredge, clean, and otherwise operate, control, and/or maintain the drainage system.” The complaint summarizes: “Defendants, by their operational activities, effectively blocked the natural flow of water unnecessarily, causing the water ... to stop up and then back flow in a southerly direction, flooding Plaintiffs property.
642 So.2d at 1087-88. Based on the complaint’s allegations, the majority held that “a claim of operational-level negligence” was pleaded for which section 768.28 waived immunity. Id. As such, the “District is potentially liable for the alleged acts, and the trial court erred in dismissing the complaint.” Id. at 1088.
In a concurring opinion, Justice Grimes agreed that the case should proceed, but his focus was on the structure and language of section 373.443. He noted that although the legislature may have intended total immunity for districts in the operation of the systems, the statute could not be read to achieve this result. He pointed *107 out that section 373.44B provided immunity for partial or total failures only if “by virtue of’ one of the four defined activities in subsections 373.443(l)-(4), which included the “[c]ontrol or regulation of dams, impoundments, reservoirs, appurtenant work, or works regulated under this chapter” and “[m]easures taken to protect against failure during emergency.” Simply because a partial or total failure of a dam or other structure occurred did not automatically result in immunity; instead, the partial/total failure had to be “by virtue of’ one of the statutorily listed actions; if so, section 373.443 would “appear to grant total immunity for damages caused by a break in the enclosure of water or a release of water caused by an equipment failure regardless of whether there was operational negligence.” Id. at 1088 (emphasis added). He also noted that the statute allowed for “liability for any damages not caused by a partial or total failure ... according to the planning-operational dichotomy” under section 768.28. Id. An example would be a damkeeper falling asleep causing waters to overflow, which would not be considered “a total or partial failure” of the dam under the statute’s language. Id. n. 2.
Turning to the allegations in Nanz’s complaint, Justice Grimes noted that most
[Ajppear directed to damages caused by planning-level decisions of the district, such as opening or closing dams or changing the flow of waters. However, some of the allegations are susceptible to the interpretation that damages were caused by operational negligence for which the district would not be immune under section 768.28 and by circumstances other than total or partial failure for which the district would not be immune under section 373.443.
Id. at 1088-89. In other words, some of the allegations — because they were not based on a total or partial failure of a dam or other work — are actionable.
Neither the majority nor concurring opinions in Nanz control the outcome of this case, but they highlight the interplay between section 768.28’s scope of immunity and that of section 373.443; the former exists only for planning level activities, while the latter is broader due to the 1989 inclusion of stormwater management systems and its more expansive language immunizing “partial or total” failures whether caused by operational negligence or not.
In this case, no dispute exists that the District’s stormwater management system partially failed due to the breach of a retaining wall for Pond F, which was caused, in part, by excessive floodwaters coming from the homeowners’ association property. There is also no dispute that the Barneses’ allegation in their complaint that the “system design” used by the District was inadequate is nothing more than a planning level decision by the District that is immunized under section 768.28 and section 373.443. The remaining focus of the dispute, therefore, is only whether the Barneses’ claim of operational negligence (which is otherwise actionable under section 768.28) is barred as one involving the partial/total failure of the District’s storm-water management system, which is undisputed, “by virtue of’ its “[c]ontrol or regulation” of the system.
The Barneses are correct that section 373.443 cannot be read “to grant absolute immunity from all forms of negligence” because it limits immunity to partial/total failures arising in only four defined situations. As Justice Grimes noted in his concurrence in Nanz, the overlay of immunity provided by sections 768.28 and 373.442 does not capture all forms of negligence (his napping damkeeper being an example); some limited species of negligence survive. But, as the trial judge noted, a *108 strong argument exists that section 373.443 “was enacted specifically to avoid the operational versus planning distinction” under section 768.28 “otherwise there would be no reason to enact” the former.
We agree that section 373.433 was intended to provide a broader scope of immunity where a partial/total failure of a stormwater management system occurs and the failure arises from the control or regulation of the system. A thorny question — but one we may sidestep on these facts — is whether the phrase “control or regulation” in section 373.443 is broader in its application than “operation” or “maintenance.” Does a district’s “control”[1] of its stormwater management system include and thereby subsume all its operational and maintenance activities of the system, and if so, was it the legislature’s intent to thereby extend immunity to all such activities (as Justice Grimes’s concurrence discusses)?
The reason we need not resolve this question is that section 373.433’s broad scope of immunity easily encompasses the Barneses’ claims that the District failed to design an adequate system, one that resulted in a partial failure due to the breach of the retaining wall in Pond F. Much of what the Barneses claim is couched in terms of a negligent failure to design or a failure to give adequate consideration to alternative designs that might have warded off the effects of flooding from the neighboring association’s runoff. Immunity for these planning level activities exists under section 768.28 as well as the broader immunity provided by section 373.443. Recognizing the scope of planning level immunity, the Barneses attempt to bolster the operational negligence claim in their amended complaint via two depositions, but neither lays out disputed facts that might be relevant to an operational level activity that caused their damages. Most of the testimony in the depositions relates to post-incident remedial efforts (such as repairing the damaged retaining wall), and much of the remainder attempts to second-guess the District’s original design of its stormwater management system. These types of allegations fall more closely into the category of planning level immunity. See, e.g., Kaweblum ex rel. Kaweblum v. Thornhill Estates Homeowners Ass’n, Inc., 801 So.2d 1015, 1016 (Fla. 4th DCA 2001) (alleged failure to improve one bank of canal and not the other is not-actionable; “cases uniformly hold that a governmental entity’s decision to upgrade or improve or not to upgrade or improve is a planning level function for which there can be no tort liability.”); Tucker v. Gadsden County, 670 So.2d 1053, 1054 (Fla. 1st DCA 1996) (“A governmental entity’s failure to upgrade or improve an existing road is a judgmental, planning level decision which is immune from tort liability under the doctrine of sovereign immunity.”).
The allegations that come closest to operational level activities regard a clogged drain, an inadequate weir along the lip of *109 one pond, and other nonconformities in ponds other than Pond F. As to Pond F, the only deficiency was alleged to be an “inlet pipe structure” that needed some “back-fill and rip-rap” to prevent erosion around the structure. These collectively appear to be the allegations the trial judge viewed as operational level activities that precluded immunity under section 768.28, a determination we do not address but which appears quite thin as a basis for denying summary judgment. We conclude that these allegations, at best, fall short of establishing a viable negligence claim that is other than a “partial or total failure” of the District’s stormwater management system arising “by virtue of’ its “[cjontrol or regulation” of its system.
Finally, the Barneses alternatively claimed that the District established a stormwater management system that was designed so deficiently as to create a known dangerous condition for which is imposed on them a duty to warn or protect the public. See Gadsden County, 670 So.2d at 1054 (“[W]hen a governmental entity creates a knoum dangerous condition, which is not readily apparent to persons who could be injured by the condition, a duty at the operational-level arises to warn the public of, or protect the public from, the known danger.”) (quoting City of St. Petersburg v. Collom, 419 So.2d 1082, 1083 (Fla.1982)). On this record, we find no evidence that the District knew prior to the extraordinary rain event of August 14, 2009, that its stormwater management system was other than one that was designed to handle all but the most extreme rainfalls.
AFFIRMED.
ROWE, J., concurs; SWANSON, J., concurs in result only.

. Notably, some states use the word "supervise” rather than "control” in defining the scope of immunity in similar dam statutes. See, e.g., Ga. Code Ann. § 12-5-383 (2014) (“No action shall be brought against the state, the commission, or any employee of the state or the commission for damages sustained through the partial or total failure of any dam or other artificial barrier dealt with in this part or its maintenance by reason of any supervision or other action taken or not taken pursuant to former Code Section 12-5-375.”); N.C. Gen. Stat. Ann. § 143-215.35 (2014) ("No action shall be brought against the State of North Carolina, the Department, or the Commission or any agent of the Commission or any employee of the State or the Department for damages sustained through the partial or total failure of any dam or its maintenance by reason of any supervision or other action taken pursuant to or under this Part.”).'